## Marrs v. Ratliff et al.

May 2, 1939.

COMBS & COMBS for appellant.
W. W. BURCHETT for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

This appeal presents for our review and determination the question of whether or not an easement of public passway has been acquired by prescription by appellees over an eight acre tract owned by appellant.

This suit was brought by appellant, seeking to enjoin appellees from trespassing upon this tract of her land, by their use of it as a public passway, and asking an injunction, restraining the defendants (here appellees) from further trespassing upon her land and removing its fences.

Appellant alleged in her petition that such use of the passway, even though extending over a long period of years, was allowed as a neighborly privilege to neighboring land owners or kinspeople of the owner of the tract and not to the public generally.

The answer to this petition, on the other hand, denied these averments of the petition and affirmatively

alleged that the passway in question was one which had been used by the public generally, as a matter of right, for a long period of years (much in excess of the statutory period) and that a prescriptive right of public passway over the tract in question had been thereby acquired.

It further appears that shortly prior to the filing of this suit, appellant, feeling that her land was being wrongfully used as a passway by certain parties, especially the appellees, without permission and that they were attempting to convert her private passway over this small tract of her land into a public highway, in that they had removed the gate and cross bar located at the southern and northern ends of the field respectively, had her husband, as her agent, to stop this misuse of her property, close up the passway entrances, by erecting a wire fence across them.

Upon this being done, the appellees, whether by way of retaliation or for the purpose of asserting claim to keep the passway open, swore out a warrant against the appellant's husband in the magistrate's court, upon which he was arrested, tried, and found guilty of having, by fencing the openings, obstructed a public way. Thereupon this suit was filed against appellees.

Upon submission of the cause upon the pleadings, joining issue on the question of whether or not this passway was a public way acquired by prescription, and the evidence heard in support of the opposing contentions of the parties on that issue, the lower court overruled appellant's motion for a temporary injunction and adjudged that "the roadway which is the subject matter of this action has been legally established by prescription and is now a roadway."

Appellant has appealed, seeking a reversal of this adverse judgment.

From the record it appears that the small tract of land in question, over which the passway in controversy extends, is located in the triangle formed by the intersection of the Mayo trail, extending along the lower end of the tract, with the Hackworth Branch, which, in its upward course, from such point of intersection, forms the right boundary line of the tract and, turning in its course at the upper end of the tract to the left, also a part of its upper boundary line. About midway of the lower line of the tract, abutting the Mayo trail,

there is a gate entering upon a passway leading to the upper end of it, where there is located a cross bar exit, through which the passway leads down a steep bank to the Hackworth Branch, abutting, as stated above, the tract's upper end.

It is further shown by the record that some forty or fifty years ago a large tract of land, embracing the small tract in question, was owned and occupied by Judge Lindsey Layne, the grandfather of appellant, and that upon his death in 1888, one of his sons, Tandy Layne (the appellant's father), acquired that certain part of the Judge's lands which lay below the Mayo trail, then a county road, upon which he lived in his father's old home, the tract in question and other land lying along and above Hackworth Branch.

It is admitted that Tandy Layne and his children used and occupied all the parcels and different tracts of the land acquired or inherited from his father (which were separated by the Mayo trail and the Hackworth Branch) as one farm, united in its ownership operation, in which there was no relationship of dominant or servient tracts, but that each and all its tracts were alike servient, whether for passway or general use, to the will and control of Tandy Layne, the owner.

The evidence very conclusively shows that Tandy Layne, in the use and management of this farm, made a private passway across this field, now owned by appellant, which afforded him convenient access to the tract in question and to his other lands lying above and beyond Hackworth Branch, and that said passway over it was used by him and the members of his family and his tenants and also some of his neighbors, living on lands beyond the headwaters of the branch, who were given the privilege of using the passway upon the condition that, in using it for passing through the tract, they would close the gate located at its southern end and replace the cross bars, furnishing a means of exit at its northern end.

Appellant states that her father never refused permission to any of his neighbors to pass through this tract, but always told them to close the gate and replace the cross bars when using the passway.

It is further shown that this passway in question was in no legal sense a way of necessity, inasmuch as a public road, running near to and parallel with it, lo-

cated in the bed of the branch, extended along the upper and east side of this property, affording a way out to the Mayo trail, even though it appears that during certain seasons of the year this branch road was difficult to use, due to high waters often at such time flooding it, when Mr. Layne's neighbors, who lived on lands beyond the headwaters of the branch (some of whom are here appellees), were allowed a permissive use of his private passway here in controversy extending over this tract.

Also, it is shown that this passway was used by Tandy Layne in hauling coal and timber from his upper lands and that such privilege to make like use of it was also, upon a few occasions, given to some of his neighbors.

While there is some evidence, given by the appellees and a few of their witnesses, that this passway, during the life of Tandy Layne, was a public passway, it falls far short we conceive of establishing such claim of appellees.

The evidence given by the appellant and her brothers and sisters, who testified for her and are entirely disinterested in the outcome of this suit, is to the effect that while Tandy Layne, during his ownership of the farm, allowed his kin and neighbors to make such permissive use of his private passway across the tract in question, its use was exercised only in such way and the right was given without any intention on the part of the owner of the tract, Tandy Layne, to surrender his ownership and control of the passway, thus made and used over this field of his farm.

Such was the character of this passway at the time of Tandy Layne's death intestate in 1905, leaving surviving him his widow and six children and three grandchildren (the children of his deceased daughter, Flora Cecil).

The evidence very preponderantly shows that following Tandy Layne's death, the lands of his estate, inherited and jointly owned by his heirs at law, and this passway over this tract were all jointly used and occupied by them, together with the purchasers of the undivided interests in the estate of certain of the heirs.

Some 10 years after Layne's death, in November, 1915, it appears by the record that the intestate's widow and heirs at law, and the grantees of those of his heirs

who had sold their undivided interests in the land, agreed to make a division of the estate. In this division, the appellant was alloted this eight acre field and a general warranty deed was made by the other joint owners of the property, conveying it to her in fee simple, with all rights appurtenant thereto, without reservation whatever therein made of any right of passway thereover. Her brother and joint heir, Frank Layne, one of the appellees, joined in executing this deed, whereby he conveyed to his sister, the appellant, all his rights whatsoever, of easement or otherwise, in this tract to her, and upon which he was at that time living.

Frank Layne, however, seeks to avoid the effect of his deed by claiming that there was established a public passway over this tract of land at the time the heirs of Tandy Layne conveyed it to appellant and that therefore there was no need for the reservation of the passway in the deed, as appellant took the land subject to such an easement of public passway.

Frank Layne appears to be the star witness in the attempt made by appellees to show not only that the tract in question was at the time of his father's (Tandy Layne's) death subject to an easement of public passway, which claim clearly is untenable, in view of the facts hereinabove stated, but that after the division of the place in 1915, when appellant acquired it, he lived on the tract as appellant's tenant for the period of some fifteen years or more, during which time the passway was used by the public generally and that therefore an easement of public passway had been acquired by prescription.

However, when more particularly interrogated as to what this public use was, his testimony relates for the most part only to the use of this passway by himself and family, while living as his sister's tenant on the place, or by his in-law relations.

It appears that during such time, his son-in-law, the appellee George Ratliff, who had become the proud owner of a car, made most frequent use of the passway, finding it more convenient for him to use than the branch road around the field, described supra, and that also Ratliff's brother, who had also acquired a car, joined George in his use of it. These parties, it appears, lived across the branch road above this tract.

So prodigal, in fact, was Frank Layne's conduct,

while occupying his sister's land as a tenant, that he not only allowed, without any right or authority, the public's general use of the passway, but also allowed his son-in-law, George Ratliff, to build a garage on the tract for the more convenient storage of his car.

Another witness or so testifies to having driven, during this time, a delivery truck over the passway in question, but it is not shown that they were not making deliveries of groceries or what not to Layne or members of his family. Also they testify as to there having been cross-ties and coal hauled over this passway by land owners above the branch road, but they do not show that such were not particular instances of permissive use made of it and, in fact, it very clearly appears that in two of such instances, the hauling referred to was done pursuant to express permission given to or bartered for by the parties using it.

On the other hand, the evidence of appellant and her many witnesses, among whom were her brothers and sisters, familiar with the history of this private passway in question, is that it was always generally recognized as being a private passway over this tract, leading from the Mayo trail up to the lands located at the headwaters of Hackworth Branch, which had always been used and controlled as a private way by its successive owners and their families from the time it was created by Judge Lindsey Layne, some fifty years before.

Further they testified that while these successive owners had always allowed their neighbors, upon proper occasions and when the Hackworth Branch road was difficult to travel by reason of high water, to use this passway, this use had always been exercised as a special privilege allowed them, without any adverse claim of right thereto.

It is our view that the evidence given by appellant and her witnesses clearly shows that neither an easement of public passway over the tract was acquired during this long period by prescription nor that there was such continuous adverse use of the passway by the public generally for the statutory length of time as was sufficient to create an easement of passway by prescription. But even if the long use made of this passway was sufficient to create a presumption that a prescriptive easement had been acquired, it was very satisfactorily rebutted by the evidence given by appellant and

her witnesses that the use of this passway by others than the family or tenants residing upon this tract was an express or implied permissive use.

Appellees insist that the mere fact that the owners of this tract established and maintained a gate and cross-bar at the termini of the passway was in itself recognition of the existence of a public passway thereover, and in support of this contention rely on the case of Smith v. Pennington, etc., 122 Ky. 355, 91 S. W. 730, 731, 28 Ky. Law Rep. 1282, 8 L. R. A., N. S., 149. However, the facts in the Smith case as to the erection and maintenance of gates by the owner of the land at the termini of a passway over it are very different from those presented in the instant case. In that case, the appellant bought a tract of land of unenclosed woodland, which was, at the time of his purchasing it, subject to an easement of public passway. Thereafter, he enclosed the land with a fence and placed a gate at either end of the passway. Later he decided to close this passway and did so by replacing the gates with a fence. When he did this, those claiming a right of way over the land instituted an action to enjoin the appellant from obstructing the passway and asking that he be required to remove the obstacles that he had placed in it, and which interfered with its use, claiming that they and those under whom they had title had used the passway as a matter of right, adversely and openly, as against the appellant and those under whom he claimed, for more than forty years. Appellant answered, admitting the use of the passway, but alleged that the use of it had always been permissive and that no claim of right to it had ever been asserted.

The court, upon hearing the case, granted appellees the relief sought and directed appellant to remove any gates or any obstructions that he had placed across the passway.

Upon appeal from that judgment, in reviewing the question of passway presented, we said:

"A passway over an uninclosed woodland had been used for more than 30 years before appellant purchased the land and enclosed it, and has been used during the 16 years that appellant has owned it. There was no grant of a passway either verbal or otherwise. No one was ever prohibited from using it, no person ever asked permission to use it,

nor was any person ever given permission to use it. Appellant testifies that he placed the gate in the fence across the highway merely as a favor to the appellees. It does not appear that the public generally used the passway, or that the general public claimed any right in its use. The only persons who have enjoyed it are appellees and occupiers of the tract of land owned by them. The use of this passway not being claimed as a matter of right, the question is will the mere use of a passway for 40 or 50 years give to the user such a right in it, that the landowner cannot revoke the privilege. This court has held in Wilkins v. Barnes, 79 Ky. 323 [2 Ky. Law Rep. 278] * * * that a grant of a right of way by prescription will be presumed from an uninterrupted, unexplained, adverse use, of such a nature as to indicate a claim of right, for a period of 15 years or more, and that it is not necessary that the person claiming the passway should show by positive testimony that he claimed its use, as a matter of right, that the burden is upon the land owner, after such long continued use of his premises, to show that the use was merely permissive, and the unexplained use of a passway over another's land for 15 years creates the presumption that the use is adverse.

"There is an apparent, but not real conflict between this line of cases and Hall v. McLeod, 2 Metc. 98, 74 Am. Dec. 400, Conyers v. Scott, 94 Ky. 123, 21 S. W. 530 [14 Ky. Law Rep. 784], and others that follow them, holding that the permissive use of a passway which has been regarded by all parties as a mere privilege allowed by the owner of the land, unaccompanied by any claim of right on the part of the user, or the public generally, or recognition of right by the owner, although it may have continued for 50 years, will not vest the user with the legal right to claim it; and there is a marked distinction between a use by the public generally, and a use by an individual, or the owners or occupiers of a specific tract of land. The continued use of a passway by the public generally for 15 years will ripen into a grant or dedication that cannot be revoked at the pleasure of the owner. * * *

"While it is true that where the use of a passway is merely permissive on the part of the owner

of the land, a privilege extended by him to his neighbors without any intention on his part to surrender his right to it, or purpose on their part to assert claim, and when there is no act or conduct by either that would indicate that allowing the use of the way was other than a neighborly act, and it is recognized that the privilege is one that may be revoked at any time by the owner of the land, its use for even 50 years will not confer the right to claim it as against the owner, or prohibit him from closing or discontinuing it.''

See, also, to such effect Snyder v. Carroll, 203 Ky. 320, 262 S. W. 290; Smith v. Oliver, 189 Ky. 214, 224 S. W. 683; Stephens v. Hamblin, 195 Ky. 428, 242 S. W. 597; Barnett v. Toole, 253 Ky. 198, 69 S. W. (2d) 378.

This same rule as to the requisites for establishing an easement by prescription is thus stated in Section 33, page 772, 9 R. C. L.:

''To establish an easement by prescription there must be: first, continued and uninterrupted use or enjoyment; second, identity of the thing enjoyed; third, a claim of right adverse to the owner of the soil, known to and acquiesced in by him. The accepted rule is that the user must be exercised by the owner of the dominant tenement, and must be open, peaceable, continuous and as of right.''

Further, in Section 39, page 781, of the same authority, it is stated that:

''Where the claimant has shown an open, visible, continuous, and unmolested use of land for the period of time sufficient to acquire title by adverse possession, the use will be presumed to be under a claim of right, so as to place upon the owner of the servient estate, in order to avoid the acquisition of an easement by prescription, the burden of rebutting this presumption by showing that the use was permissive.''

In Section 40, page 782 of the same text, it is stated that:

''Evidence of adverse possession must be clear and positive, and should be strictly construed. * * * It is sufficient if the proof shows that he has so acted as to indicate clearly that he did claim title.''

Here the proof was clear that the gate and cross-

bars to this field were erected by the owners of the land when no claim was made to right of passway thereover, and therefore clearly of different effect from those erected in the Smith case, supra, in that there was no claim made, at the time of their original construction, of any easement of passway over the land.

It is also indirectly argued that these owners of land lying at the headwaters of the branch, at the upper end of this tract, were entitled to a passway over it, as being in the nature of a way of necessity. However, clearly this contention is untenable, in that, as stated in 21 R. C. L., Section 10, page 1214:

"A way from necessity is an easement founded on an implied grant or reservation and is an application of the principle that wherever one party conveys property, he also conveys whatever is necessary to the beneficial use of that property, and retains whatever is necessary to the beneficial use of land he still possesses; but it must be a way of strict necessity; mere convenience will not do. The necessity is only evidence to establish the implied grant or reservation."

The presumption of an implied grant of a passway of necessity is dependent on the terms of the deed and facts in the case. Godman v. Jones, 180 Ky. 217, 202 S. W. 662. Mere matter of the convenience alone is insufficient to create a right of way by necessity. Littlefield v. Hubbard, 124 Me. 299, 128 A. 285, 38 A. L. R. 1306; Duvall v. Ridout, 124 Md. 193, 92 A. 209, L. R. A. 1915C, 345.

It is indirectly argued by appellees that the owners of land lying above and across the branch road from this tract were entitled to a passway thereover under the rule of a right of passway across the tract in question as a way of necessity, but this contention is clearly untenable, as the facts of the instant case do not bring their claim within the rule as to the presumption of an implied grant of a passway upon the ground of necessity of claimant therefor, as it is shown there was a roadway always available to these upper land owners, along the branch, by using the public branch road.

We, therefore, after a very careful consideration of the questions above discussed and others urged in brief of appellees, which we regard as also equally without merit within the reason of the rules hereinabove given,

have reached the conclusion that the learned trial court erred in adjudging that the passway in question over appellant's land here in controversy was an existing public road, acquired as a prescriptive easement thereon.

Therefore, for the reasons hereinabove stated, the judgment of the learned chancellor is reversed, with direction to vacate same and, in lieu thereof, enter one in harmony with this opinion.