## Owens v. Goff et al.

Feb. 28, 1941.

Kennedy & Kennedy for appellant.

Wesley & Son and J. M. Perkins for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellees and plaintiffs below, Warren Goff, et al., own a farm in Pulaski county, the south line or side of which is bordered by the Cumberland river. Immediately west of their tract is one owned by appellant and defendant below, Lena Owens, and it also extends south to the same river. The line separating the two farms for a considerable distance north from the river is only about 115 feet east of a public road known as Jacksboro Road, all of which is on the land of defendant. This controversy involves the right to a passway easement claimed by plaintiffs across the narrow strip of land lying between the public road on defendant's land, and plaintiffs' west line at a point only one hundred and thirteen feet wide, which the proof in the case shows has been used by owners and occupiers of plaintiffs' tract a great number of years as a passway to and from plaintiffs' farm over the narrow strip referred to—some of the witnesses testifying that it had been so used, not only by plaintiffs and their predecessors in title, but also to some extent by others living beyond their farm. A short while before September 2, 1939—when this action was filed in the Pulaski circuit court by plaintiffs against defendant—she placed obstructions in the passway, a part of which consisted in building a cabin across it. By this action plaintiffs sought mandatory process requiring defendant to re-

move the obstructions, and a prohibitory order preventing her from placing future obstructions therein, on the ground that they were the owners of an easement over defendant's land occupied by the passway which had been acquired by long continued adverse user which had ripened into an acquired prescriptive right. The answer was a denial of plaintiffs' ownership of the easement as claimed by them, and an issue out of chancery was ordered. Testimony was heard and the factual issues were submitted to a jury under instructions prepared and offered by counsel for defendant—each of which the court gave. The verdict was in favor of plaintiffs, followed by a judgment in accordance with the prayer of the petition, to reverse which defendant prosecutes this appeal.

Perhaps there is no principle of law wherein the line of demarcation between rights acquired under it and where they were denied than the one of acquiring private easements over land by prescriptive use. Some general principles are well settled among which are, that a continuous and uninterrupted user of the passway for as much as or more than fifteen years will raise a presumption that it was being claimed adversely and as a matter of right, but which presumption is a rebuttal one which the owner of the servient estate may overcome with his testimony and when he establishes by his proof that the use began under permission from him, then another presumption arises that the continuous use thereafter was amicable to the title of the servient owner under his originally granted permission. But in such case the presumption so indulged in favor of the servient owner may be overcome by the dominant claimant of the passway with testimony showing requisite adverse user thereafter. But from that stage of the investigation many and varied facts and circumstances are permitted to be considered in arriving at the intent of the parties upon which the character of use depends and should be determined.

In the case of Snyder v. Carroll, 203 Ky. 320, 262 S. W. 290, a more or less discussion of the history of the principle of law here involved, i. e., the acquisition of a passway easement by prescriptive use over another's land, and the various facts which should be taken into consideration, were therein discussed. It was pointed out in that opinion that the doctrine arose when it first

began to be recognized and enforced from the necessities of the case. At that time there were but few public roads. The country was mostly in primeval forest and settlers were compelled to have rights of ingress and egress to their scattered settlements. As the country advanced and improved roads became more plentiful the necessity for such passways gradually diminished. It was also pointed out in that opinion that if the use of the passway began with the permission of the servient estate owner, or even if he did not expressly object to such user but suffered and permitted it to continue without objection, the evidence should nevertheless show in some manner that the owner of the dominant estate was so appropriating that of the servient estate owner under a claim of right. Therefore, in order for the court to be enabled to arrive at some tangible conclusion upon the contested issues, a presumption was created that the user by the dominant estate owner would be considered as adverse when he had so used it for as much as or more than fifteen years, and in overcoming that presumption the servient estate owner might—in addition to his testimony contradicting that presumption—prove other pertinent facts which had a tendency to disprove it. Our comments made in that opinion will not be repeated here since they may be ascertained by consulting it. Some prior cases supporting what was therein said are cited therein, and the opinion has been followed and adhered to since its rendition in a number of cases.

Coming now to the testimony in this case on the issue of prescriptive use, many disinterested witnesses—excluding plaintiffs—several of whom are advanced in age and have lived in that neighborhood all their lives, testified to the long continued user of the passway by owners and occupiers of the land now owned by plaintiffs, and sometimes by their neighbors in getting to the Jacksboro Road. Some of them said that the use had so continued for perhaps as long as fifty or sixty years, no witness placing the beginning of the use nearer to the time of trial than thirty or thirty-five years. The proof also shows that plaintiffs do not now have, nor have they ever had, any passway by which they could reach the Jacksboro or other road than by crossing the strip between it and plaintiffs' west line separating their farm from that of defendant. It is true that some proof was injected in the case that many years ago there was

a very inadequate and most difficult passway to travel (because of the topography of the territory) that was used mostly as a pedestrian route, and sometimes by wagons with ox teams, but it is shown that the terrain over which the location of that passway ran (but for how long and to what extent is not shown) is so rough and difficult to travel over that it is practically impossible to do so, and especially with modern vehicles of travel. That old passway has long since been abandoned and the place where it ran is now scarcely discernible. It was about fifty poles south of the present disputed one, and its route was greatly obstructed because of the knobs and bluffs across which it ran near the Cumberland River. Upon its entire disuse the ancestors of plaintiffs began the use of the present passway some fifty rods north of the old abandoned one, and they and their successors in title have continued to use it from that time. During the period of user they repaired the passway so as to keep it in reasonable condition for travel and, at least at one time, they blew rocks out of it with the use of dynamite. Such acts, plus the express testimony heard at the trial to the effect that the user of the passway in contest was under a claim of asserted right with no manifested objection by plaintiff or her predecessor in title, strongly tend to establish plaintiffs' claim of adverse user. The only proof in the case of any kind to overcome that inference is the testimony of defendant and that of her sister who lives with her, to the effect that on some remote occasions the ancestor of plaintiffs (their father) obtained her express permission to use the passway, but that testimony is denied by that ancestor—who is living and who testified in the case—as well as by other proven and undenied circumstances. There is no pretense that on any other occasion the indiscriminate use of the passway for all purposes of ingress and egress to and from plaintiffs' farm any such permission was requested, given or refused.

Moreover, there was testimony abundant to show that there was no other feasible route whereby plaintiffs could reach the Jacksboro Road (the only outlet from their farm to market, school, voting places, &c.) except a passway across the described strip of land of defendant, since the lower end of that strip (where the old road referred to ran) was at a place where the topogra-

phy of that area rendered it impossible to open or maintain a passway, and the same conditions prevail in the south part of plaintiffs' farm as it approached Cumberland River, thus establishing, according to our conclusion, a practical necessity for some outlet from their farm to reach the Jacksboro Road. That conclusion appears to have been indulged by defendant and her predecessor in title, since no manifested objection to the long use of the passway was made until some short while before the filing of this action.

But, it is insisted that any proof tending to establish a way of necessity has no place in this case, and that all of the proof heard at the trial of that nature was improperly admitted and should not be considered. Whether or not an alleged owner of an easement issuing from another's property may introduce proof of his title acquired in another way than the one he relies on in his pleading, when his ownership of the title he asserts is denied, need not be determined in this case. But even if that question should be determined in the negative, then the facts creating the necessity would appear to be pertinent under a claim of a prescriptive right acquired by adverse use since the necessity for the beginning of such use would then lend color to acquisition of rights of ingress and egress to the owner of the dominant estate and would tend to show that it was claimed as a matter of right.

Moreover, prior to April 29, 1868, the two farms of plaintiffs and defendant were owned as one tract by George W. Smith. On that day he conveyed to the grandfather of plaintiffs, John W. Goff, the tract they now own. Later it became the property of Henry Goff, the father of plaintiffs, and from him the title passed to plaintiffs. The difficulty of roads or passways for ingress and egress purposes to and from plaintiffs' farm on account of the roughness of the terrain existed, of course, at the time that deed was executed, and under a well recognized principle of law the grantor therein by implication granted an easement right of passway to his vendee over his remaining land, and which doctrine is contained in the text of 19 C. J. beginning on page 913, Section 102, and continuing through the two following pages and sections. In Note 22 to Section 103 of the text on page 914 there are cited cases from almost every court in the Union—and also from some foreign juris-

dictions—sustaining that rule, and in subdivision (a) of that note, on page 915, the reason for the rule is set out in this language: "Upon the principle of construction that, where a man grants a thing, he grants with it everything necessary to its enjoyment, it is held that by a grant of land easements necessary for its enjoyment are created ex necessitate and pass by the grant, although not expressly named."

Many cases are cited in support of that statement and the doctrine there announced has been followed by us in a number of cases, some of which later ones are, Himler Coal Company v. Kirk, 205 Ky. 666, 266 S. W. 355, and Marrs v. Ratliff, 278 Ky. 164, 128 S. W. (2d) 604. Prior domestic cases are cited in those opinions to the same effect, and in the latter case a supporting text contained in 21 R. C. L. p. 1214, Section 10, is also referred to. We are, therefore, of the opinion that under the deed of Smith to plaintiffs' grandfather the former granted by implication an easement right-of-way to the owner or owners of his conveyed tract whereby they acquired an outlet from the land so conveyed, as well as the right of ingress to the conveyed land as a way of necessity. However, independently of that conclusion, we are not prepared to say that the proof heard at the trial did not sustain the verdict of the jury which the court approved, sustaining their prescriptive right.

Wherefore, the judgment is affirmed.