Osco SARVER and wife, Gliddie
Sarver, Movants,

v.

The COUNTY OF ALLEN, By and
Through ITS FISCAL COURT, A. R.
Oliver, Judge Presiding, Respondent.

Supreme Court of Kentucky.

May 22, 1979.

David W. Anderson, David F. Broderick, Cole, Harned & Broderick, Bowling Green, for movants.

James S. Secrest, James S. Secrest, Jr., Scottsville, for respondent.

PALMORE, Chief Justice.

This dispute concerns the status, private vis-a-vis public, of an old road or passway in Allen County. The real parties in interest are neighboring landowners, but through the device of a KRS Chapter 178 proceeding to establish the disputed passway as a "county road" the county has been drawn into the position of acting as surrogate for one of them.

The facts of the case should be approached with a clear understanding of the distinction between a "county road" and a "public road."

■ According to KRS 178.010, " 'County roads' are public roads which have been accepted by the fiscal court of the county as a part of the county road system". Prior to 1914 it was recognized that an "acceptance" by the county could be accomplished informally, e. g., by maintenance of the road at county expense. *Riley v. Buchanan*, 116 Ky. 625, 76 S.W. 527, 528, 25 Ky.Law Rep. 863, 63 LRA 642, 3 Ann.Cas. 788 (1903). Since the enactment of Ch. 80, Acts of 1914, however, a formal order of the fiscal court has been necessary to establish a county road. *Rose v. Nolen*, 166 Ky. 336, 179 S.W. 229, 230 (1915); *Illinois Central Railroad Co. v. Hopkins County,* Ky., 369 S.W.2d 116, 118 (1963). Otherwise, though a road may

be "public," it is not necessarily a "county road." *Ibid.* The obvious reason for this particular distinction is, of course, a public policy against holding counties responsible for the upkeep of any and all highways and biways that chance to become "public" through processes of dedication or prescription over which the counties have no choice or control.

As KRS 178.010(b) necessarily implies, most "county roads" were "public roads" before they were accepted as county roads, but it is not necessary that this be so, because a county is statutorily empowered to lay out and establish a county road before acquiring the necessary right-of-way from the owners of the property over which it will be opened. Cf. KRS 178.080.

This litigation originated in an order adopted by the Allen Fiscal Court on August 16, 1976, formally accepting as a part of the county road system "that certain roadway leading from the Macedonia Ridge Road (Ky. Highway No. 1147) in a Northerly direction by the real property owned by Osco Sarver, Randall Harper, and Joe K. Meador (formerly Audrey Lyles) to the Osco Sarver farm."

The strip in question runs northward several hundred feet from an elbow in Kentucky 1147, turning left, or westward, for a short distance to a sassafras tree. Many years ago it was a wagon road and continued on through to the village or community of Petroleum, but not within the past 20 years or so. In modern times it has been used only to reach the Wyatt Sarver farm, where it now ends, and the R. M. Lyles farm, which adjoins the east boundary of the Wyatt Sarver place and corners on the disputed passway at the point where it turns westward into the Wyatt Sarver tract.

Wyatt Sarver was the father of Osco Sarver, who now owns the Wyatt Sarver farm. Osco Sarver also owns the land situated between the Wyatt Sarver tract and Highway 1147 as it extends westwardly from the mouth of the disputed roadway, which runs on or along Osco Sarver's east boundary. The property on the west side of

this roadway, adjoining the Lyles tract on the north and extending southward beyond the elbow of Ky. 1147, is owned by Randall Harper.

The Lyles tract is now owned by Joe Meador, but in the interest of clarity we shall call it the Lyles tract and shall likewise refer to the north part of the Sarver tract in which the passway ends as the Wyatt Sarver tract.

In 1958 Wyatt Sarver and his wife resided in a house near the end of the passway. Evidently the old lane leading to Highway 1147 had deteriorated to the extent that it was not passable for vehicular traffic, so Osco Sarver approached the county judge for help, in order that his father's and mother's home might be accessible in the event of necessity. The county thereupon ditched, widened, graded and gravelled the passway at Osco's expense. Later, in October of the same year, the fiscal court voted to accept it as part of the county road system if the adjoining landowners executed right-of-way deeds. Admittedly, however, no such deeds ever were executed. In 1959 Osco Sarver's mother died and he moved his father into his own home, which is located on Highway 1147. The Wyatt Sarver residence has been unoccupied since that time.

Meanwhile, the roadway had been used intermittently by occupants of the Lyles tract. Audrey Lyles, who was born on the place, left it in 1930 or 1931 and sold it to Joe Meador in 1974. Osco Sarver lived in the Lyles house as a renter for some years until 1956, after which a family named Carter occupied it for five or six years during the 60's, but since that time it has been uninhabitable and, perforce, uninhabited.

The legal status of the old road first became a matter of real significance shortly after Joe Meador bought the Lyles place in 1974. Although the evidence on the point falls somewhere between scant and nonexistent, it may be inferred that this passway would be the only means access to the Lyles tract. It may be, of course, that there is a private easement for the benefit of the Lyles place, but that question does not fall within the purview of this litigation. In any event, it was Meador who instigated the 1976 action by the fiscal court.

■ As explained earlier in this opinion, it is not necessary to the establishment of a proposed county road that it be an existing public road or, indeed, that it be an existing road or passway of any kind. Hence a fiscal court order establishing a county road would not necessarily be erroneous on the ground that the designated roadway had not heretofore attained the status of a public road. In this instance, however, it is manifest from the content of the fiscal court's preliminary order of August 10, 1976, and final order of August 16, 1976, that its action was premised upon a finding that the passway in question already had the legal status of a "public road" and that there was no intention on the part of the county either to acquire or to perfect title to the right-of-way. So, too, the case has been practiced on the issue of whether, at the time the fiscal court accepted it as a county road, it was already a public road. For that reason our review of the record is directed to that issue.

For purposes of the discussion, we need not question whether the disputed way was at one time a public road. When it was open and passable all the way through to Petroleum, we shall assume (but without deciding, of course) that it was a public road. The real issue, then, is what does the evidence prove, or not prove, with respect to its abandonment?

■ A public road that is not a "county road" can be abandoned without formal action. *Williams v. Woodward*, Ky., 240 S.W.2d 94, 95 (1951); *Sowards v. Commonwealth*, 297 Ky. 613, 180 S.W.2d 545, 546 (1944); *Phillips v. Lawrence*, 23 Ky.Law Rep. 824, 64 S.W. 411 (1901). When the public has acquired the free use of a roadway by user, as appears to be the case with respect to this old shortcut, it may abandon that right by a long period of nonuser. In *Phillips v. Lawrence*, 23 Ky.Law Rep. 824, 64 S.W. 411 (1901), although a road had

been created by formal action of the fiscal court, its abandonment was established by proof of absolute nonuser for 33 years, during which time the road had become impassable to vehicular traffic and the travelling public had used other and better public roads in the neighborhood. Considering that a public user ordinarily ripens into a prescriptive easement in 15 years, cf. *Cummings v. Fleming County Sportsmen's Club, Inc.*, Ky., 477 S.W.2d 163, 167 (1972), it would seem reasonable to apply the same criterion to a reversal of the process—that is, an abandonment through nonuse by the general public.

■■ The evidence leaves no room for doubt that for over thirty years, and probably longer than that, prior to the fiscal court order in this case there had been no travel whatever on the disputed passway except for the purpose of access to the old Lyles and Wyatt Sarver houses, and except for some amount of grading work done by county employes from time to time after Osco Sarver had asked for help in 1958. In short, for thirty years or more the road has had no purpose for which it could have been put to a legitimate use by the public. Cf. *Cummings v. Fleming County Sportsmen's Club, Inc.*, Ky., 477 S.W.2d 163, 165 (1972). Its only possible use was to serve the private convenience of the owners or occupants of the Lyles and Wyatt Sarver tracts. Cf. *Marrs v. Ratliff*, 278 Ky. 164, 128 S.W.2d 604 (1939). As the acts of county officials in improving or maintaining a road, standing alone, do not constitute a public user capable of ripening into a prescriptive title, cf. 477 S.W.2d 167, by parity of reasoning neither can they alone amount to such a continued public user as will negate a public abandonment.

The characterization of the passway in question by some of the witnesses as a "public road" reflects a conclusion rather than a fact, and cannot be accorded any effect beyond the probative weight of the facts from which it was derived. Those facts do not reasonably support a finding that at the time of the fiscal court's order of August 16, 1976, this disputed passway was a public road, and for that reason we are of the opinion that the trial court's finding to that effect was clearly erroneous.

■ Two points mentioned in the opinion of the Court of Appeals affirming the judgment of the trial court require clarification. The first, upon which the county has placed reliance in its arguments to this court, is that Osco Sarver did not prove his title to the land in question. The answer, we think, is that his title is not involved. Whether the alleged road is on his property or merely borders it, under KRS 178.115(2) he was an aggrieved party and had standing to contest the fiscal court's order through an action in the circuit court. The contest goes only to the validity or propriety of the order.

■ The other point is the suggestion that because the fiscal order had been subjected to a review in the circuit court, its further review by the Court of Appeals was a matter of discretion rather than a matter of right. In this sense, however, a statutory "appeal" to the circuit court from any agency or tribunal other than the district court is an original action and not an "appeal." Cf. KRS 23A.010(4). Though not effective until January 2, 1978, this statute reflects a proper construction of the term within the meaning of Const. Sec. 115(a) and the rules promulgated by this court.

The decision of the Court of Appeals is reversed with directions that the cause be remanded to the trial court for entry of a new judgment setting aside the order of the Allen Fiscal Court entered on August 16, 1976.

All concur.