**Marlow CARROLL, Appellant,**

v.

**Timmy MEREDITH, Appellee.**

No. 2000–CA–002289–MR.

Court of Appeals of Kentucky.

Oct. 26, 2001.

Bryan Le Sieur, Brownsville, KY, for Appellant.

Gary S. Logsdon, Brownsville, KY, for Appellee.

Before JOHNSON, KNOPF and MILLER, Judges.

*OPINION*

JOHNSON, Judge:

Marlow Carroll has appealed from an order of the Edmonson Circuit Court entered on June 23, 2000, which granted Timmy Meredith an easement by necessity to the back portion of his property over a private roadway on Carroll's property. Having concluded that the trial court erred by applying an incorrect legal standard and by finding sufficient necessity for the use of the roadway, we reverse.

Carroll owns an 80–acre tract of land adjacent to a six-acre tract of land owned by Meredith. Carroll purchased his land in 1974 after having engaged in mining operations, along with his employer, on the property under a lease agreement between 1970 and 1974. Meredith purchased his land in 1994. At one point, both tracts were owned by Joel Stinnett, who created a roadway in the 1940's across the property to the J. Carroll Road, a two-lane public highway. The Stinnett property was subsequently owned by Carroll's parents and other relatives who divided it in approximately 1966. Following the division of the property, the Joel Stinnett Roadway was used as the primary means of ingress and egress off of J. Carroll Road into Marlow Carroll's tract. Both the Carroll and Meredith tracts abut the J. Carroll Road, with Meredith having approximately 300–500 feet of frontage on the J. Carroll Road. The Joel Stinnett Roadway borders the two parties' properties.

Between 1970 and 1974, a locked cable was placed across the Joel Stinnett Roadway. After Carroll purchased his tract, he erected a wooden gate across the entrance that is approximately 50–100 feet from the J. Carroll Road. He locked the gate with a padlock and placed a no trespassing sign on it. Carroll alone has maintained the Joel Stinnett Roadway. Carroll periodically allowed some individuals to use the roadway for access to his pond or other property located behind his tract. When Meredith purchased his tract, Carroll gave him a key to the lock on the fence and permission to use the roadway to transport wood Meredith cut on the back or lower portion of his tract. After some incidents involving destruction of items on Carroll's property and injury to one of his cows, Carroll changed the lock on the gate and informed Meredith that he would no longer be allowed to use the Joel Stinnett Roadway. Carroll also put up fencing along the roadway to prevent access to it. Meredith still had access to his mobile home, which was located on the front section of his tract, via the J. Carroll Road and a driveway connected to a portion of the Joel Stinnett Roadway which had not been restricted by the gate, but he had no established means of access by vehicle to the back or lower portion of his tract.

On March 7, 1998, Meredith filed a complaint in the Edmonson Circuit Court seeking to quiet title to the land containing the Joel Stinnett Roadway. He claimed a fee simple title to the land by adverse possession. After taking the depositions of the parties, Carroll filed a motion for summary judgment in September 1998, which the trial court denied because of the existence of genuine issues as to material facts.

On March 31, 1999, the trial court conducted a bench trial at which Timmy Meredith and Doyle Hardin, a surveyor, testified for the plaintiff/appellee and Marlow Carroll, Eddie Higgs, Ivan Hornback, and Wilbur Oller testified for the defendant/appellant. Meredith testified that the locked gate on the Joel Stinnett Roadway was in place when he purchased his property and that he had been aware of its existence for at least 20 years. He stated that he knew Carroll controlled access to the roadway. Meredith said Carroll initially allowed him to use the roadway but later withdrew his permission and changed the lock. He stated that no one had lived on his tract for at least 15 years prior to his purchasing it but that he lived there in a mobile home with his parents. He indicated that a bluff on his property prevented easy access to the back portion except by way of the Joel Stinnett Roadway. Meredith said he needed access to the back portion of his property to transport wood.

Doyle Hardin testified that the description in Meredith's deed did not contain sufficient measurements for him to prepare a plat of the property. He stated that the roadway provided access to the back or lower portion of Meredith's tract and that otherwise it would be very difficult to get a vehicle across Meredith's property because of a steep bluff. He believed that use of a roadway in a deed description generally is interpreted to convey ownership to the center of the roadway.

Marlow Carroll testified that Joel Stinnett originally created the roadway when he owned a large piece of property which included the land owned by the two parties. The land was later owned by Carroll's grandmother and father. The roadway provided access to a house and a lake on the property now owned by Carroll. It was also used during the strip-mining operations between 1970–1974. When Carroll purchased his tract, he initially prevented use of the road with a locked wire

cable and later a wooden fence. In 1974, Ivan Hornback's mother-in-law, Corene Miller, was living in a mobile home on Meredith's tract. Hornback purchased the tract in 1977 when his mother-in-law left the area and no one lived on the property until 1994 when Meredith purchased it from Hornback and Wilbur Oller. Carroll testified that neither Miller, nor Hornback had used the Joel Stinnett Roadway. Carroll allowed a few people to use the roadway for access to the lake on his property for purposes of fishing. Carroll stated that he alone maintained the roadway. He said that he allowed Meredith to use the roadway to haul wood, but a year later he withdrew his permission and changed the lock on the fence. Carroll testified that based on his experience having owned and operated a bulldozer for several years, a roadway could be created entirely on Meredith's land for vehicular use in three to four hours.

Ivan Hornback and Wilbur Oller testified that no one lived on the Meredith tract between 1977–1994. Hornback also stated that he did not speak with Meredith before Meredith purchased the property in 1994. Oller said that he viewed the property with Meredith's father and they did not use the roadway to access the back portion, but instead walked down the bluff. He stated that he did not discuss access to the back of the property with the Merediths. Oller also testified that he assumed the Joel Stinnett Roadway was not part of his property, so he intended to build a roadway across the property but sold it before he could start the project. Oller indicated that it would be expensive to build a new road.

On June 23, 2000, the trial court entered an order wherein it ruled that Carroll had acquired title to the Joel Stinnett Roadway through adverse possession, but that Meredith was entitled to a limited easement

for access to the back portion of his tract. Although acknowledging that Meredith failed to plead the existence of an easement and did not establish the right to ownership or use of the roadway by equitable estoppel, the trial court ruled that there was sufficient evidence admitted at trial to support the recognition of an implied easement by necessity. It reasoned as follows:

As Defendant notes, there are no Kentucky cases giving an easement by necessity when a portion of the tract has access to a public road. However, there are also no cases holding that such a finding would be improper. It appears that building a road that would allow a vehicle to travel from the front part of the property, over the bluff, to the rear portion of the property, while not impossible, would be a tremendous undertaking in terms of time and expense. There are Kentucky cases, including *Bob's Ready to Wear, Inc. v. Weaver*, 569 S.W.2d 715 (Ky.App.1978) holding that one isn't required to show "absolute necessity" for access to their property, but that "all that is required is that the easement be reasonably necessary." In that case the court stated that the fact that one of the parties had other access to their store "is not an automatic bar to their claim to an easement by implication to the parking lot."

Likewise, in *Knight v. Shell*, 313 Ky. 852, 233 S.W.2d 973 (Ky.1950), the court quoted from Restatement, Property, Volume 5, Chapter 38, Section 476g, p. 2983:

.... If land can be used without an easement, but cannot be used without disproportionate effort and expense, an easement may still be implied in favor of either the conveyor or the conveyee on the basis of ne-

cessity along (sic) without reference to prior use.

Taking into account the effort and expense building a roadway through the Plaintiff's property would entail and the fact that the access Plaintiff is asking for is minimal (the right to use a portion of the roadway to carry firewood and gardening items) this Court finds that the Plaintiff is entitled to an easement of the roadway.

On June 30, 2000, Carroll filed a motion to amend pursuant to CR[1] 52.02 and CR 59.01 challenging the trial court's awarding of an easement to Meredith. He argued there was insufficient evidence of necessity. On August 25, 2000, the trial court summarily denied the motion. This appeal followed.

The sole issue on an appeal is whether the trial court erred by recognizing an easement by necessity over the Joel Stinnett Roadway in favor of Meredith. Carroll contends that the trial court's finding of an easement by necessity is not supported by the evidence and that it erred in applying the law to the facts. He asserts that there was no proof that there would be any disproportionate expense or effort required to provide access to the rear portion of Meredith's six-acre tract. He points to testimony by Meredith and Wilbur Oller that creating an alternate road-way would merely be difficult. Carroll states that Meredith offered no proof as to the expense of an alternate route. He maintains that the trial court applied an incorrect standard of necessity in finding the need for an access easement.

▮▮▮ Since this case was tried before the court without a jury, its factual findings "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses...."[2] A factual finding is not clearly erroneous if it is supported by substantial evidence.[3] However, a reviewing court is not bound by the trial court's decision on questions of law. An appellate court reviews the application of the law to the facts and the appropriate legal standard *de novo*.

▮▮▮ Generally, an easement may be created by express written grant, implication, prescription or estoppel.[4] Easement by implication includes two legal theories: (1) quasi-easement and (2) easement or way by necessity.[5] A quasi-easement arises from a prior existing use of land; whereas, an easement by necessity is based on public policy and an implied intent of the parties favoring the use and development of land as opposed to rendering it useless.[6] Easements are not favored

---

1. Kentucky Rules of Civil Procedure.

2. CR 52.01. *See also Lawson v. Loid,* Ky., 896 S.W.2d 1, 3 (1995); *A & A Mechanical, Inc. v. Thermal Equipment Sales, Inc.,* Ky.App., 998 S.W.2d 505, 509 (1999).

3. *Owens Corning Fiberglas Corp. v. Golightly,* Ky.App., 976 S.W.2d 409, 414 (1998); *Faulkner Drilling Co. v. Gross,* Ky.App., 943 S.W.2d 634, 638 (1997); *Uninsured Employers' Fund v. Garland,* Ky., 805 S.W.2d 116, 117 (1991).

4. *Loid v. Kell,* Ky.App., 844 S.W.2d 428, 429 (1992)(citing *Grinestaff v. Grinestaff,* Ky., 318 S.W.2d 881, 884 (1958) and *Holbrook v. Taylor,* Ky., 532 S.W.2d 763, 764 (1976)).

5. *See generally Restatement (Third) of the Law of Property* §§ 2.11–2.15 (1998); 28A C.J.S. *Easements* § 92 (1996 and Supp.2001); *Albert G. Hoyem Trust v. Galt,* 292 Mont. 56, 61, 968 P.2d 1135, 1138 (1998).

6. *Marrs v. Ratliff,* 278 Ky. 164, 128 S.W.2d 604, 609 (1939); *Reese v. Borghi,* 216 Cal. App.2d 324, 30 Cal.Rptr. 868, 872 (1963); *Burley Brick & Sand Co. v. Cofer,* 102 Idaho 333, 335, 629 P.2d 1166, 1168 (1981); *Bickel v. Hansen,* 169 Ariz. 371, 375, 819 P.2d 957, 961 (1991).

and the party claiming the right to an easement bears the burden of establishing all the requirements for recognizing the easement.[7]

A quasi-easement is based on the rule that "where the owner of an entire tract of land or of two or more adjoining parcels employs one part so that another derives from it a benefit of continuous, permanent and apparent nature, and reasonably necessary to the enjoyment of the quasi-dominant portion, then upon a severance of the ownership a grant or reservation of the right to continue such use arises by implication of law."[8] Generally, in order to prove a quasi-easement by implication of law, a party must show: (1) that there was a separation of title from common ownership; (2) that before the separation occurred the use which gave rise to the easement was so long continued, obvious, and manifest that it must have been intended to be permanent; and, (3) that the use of the claimed easement was highly convenient and beneficial to the land conveyed.[9] Because a quasi-easement involves the intentions of the parties, the date the unity of ownership ceases by severance is the point of reference in ascertaining whether an easement has been imposed upon adjoining land.[10]

Factors relevant to establishing a quasi-easement include: "(1) whether the claimant is the grantor or the grantee of the dominant tract; (2) the extent of necessity of the easement to the claimant; (3) whether reciprocal benefits accrue to both the grantor and grantee; (4) the manner in which the land was used prior to conveyance; and (5) whether the prior use was or might have been known to the parties to the present litigation."[11] The courts imply an easement more readily in favor of a grantee than a grantor because a grantor has the ability to control the language in the deed to express the intentions of the parties.[12] Whether the prior use was known, involves not absolute direct knowledge, but "susceptibility of ascertainment on careful inspection by persons ordinarily conversant with the subject."[13] Also, the use must be "reasonably necessary" meaning more than merely convenient to the dominant owner, but less than a total inability to enjoy the property absent the use.[14]

In contrast to a quasi-easement, which derives solely from the im-

7. See, e.g., Ben Snyder, Inc. v. Phoenix Amusement Co., 309 Ky. 523, 218 S.W.2d 62 (1949)(involving prescriptive easement); and Marrs, supra. See also Thompson v. Whinnery, 895 P.2d 537, 540 (Colo.1995)("The burden of proving the existence of an implied easement of necessity is upon the person claiming the easement.").

8. Kreamer v. Harmon, Ky., 336 S.W.2d 561, 563 (1960). See also Swinney v. Haynes, 314 Ky. 600, 236 S.W.2d 705 (1951).

9. Evanik v. Janus, 120 Ill.App.3d 475, 485, 76 Ill.Dec. 308, 458 N.E.2d 962, 969 (1983); Bob's Ready to Wear, Inc., 569 S.W.2d at 718.

10. Evanik, 120 Ill.App.3d at 486, 76 Ill.Dec. 308, 458 N.E.2d at 969; Thompson v. Schuh, 286 Or. 201, 593 P.2d 1138, 1145–46 (1979);

Boyd v. McDonald, 81 Nev. 642, 650 n. 6, 408 P.2d 717, 721 n. 6 (1965)(noting that evidence of later conveyances by original owner was only relevant to show intentions with respect to initial severance); Holden v. Weidenfeller, 929 S.W.2d 124 (Tex.App.1996).

11. Bob's Ready to Wear, Inc., 569 S.W.2d at 719 (citing Knight v. Shell, 313 Ky. 852, 233 S.W.2d 973 (1950)); 5 Restatement of the Law of Property § 476 (1944). See also Sievers v. Flynn, 305 Ky. 325, 204 S.W.2d 364 (1947).

12. Knight, 233 S.W.2d at 975; Restatement of the Law of Property § 476 cmt. c.

13. Sievers, 204 S.W.2d at 366.

14. Id.

plied intent of the parties, an easement or way of necessity is based primarily on the policy favoring beneficial use of property.[15] Unlike a quasi-easement involving prior use, an easement by necessity exists in favor of the dominant estate whether it is used or not, so long as it is necessary for access.

 The three prerequisites to creation of an easement or way of necessity are (1) unity of ownership of the dominant and servient estates; (2) severance of the unity of title by a conveyance of one of the tracts; and (3) necessity of the use of the servient estate at the time of the division and ownership to provide access to the dominant estate.[16] While necessity is *one* factor relevant to determining the intent of the grantor to grant a quasi-easement, necessity of access is the primary factor for the existence of a way of necessity. A

greater degree of necessity is required to create an easement by necessity than for a quasi-easement based on prior use.[17] As opposed to the "reasonable" necessity associated with quasi-easements, a requirement of "strict" necessity has traditionally applied to easements or ways of necessity.[18] Strict necessity has generally been defined as absolute necessity such as where property is landlocked or otherwise inaccessible.[19]

 A way of necessity generally will not be implied if the claimant has another means of access to a public road from his land however inconvenient.[20] In addition, courts applying the strict necessity standard have rejected the creation of an easement by necessity to a portion of a claimant's property where any part of the property abuts or has direct access to a public road.[21] A party seeking an implied

**15.** *See Warfield v. Basich,* 161 Cal.App.2d 493, 498, 326 P.2d 942 (1958).

**16.** *See* 28A C.J.S. *Easements* § 93 (1996 and Supp.2001); *Tobias v. Dailey,* 196 Ariz. 418, 998 P.2d 1091 (2000); *Graff v. Scanlan,* 673 A.2d 1028 (Pa.Cmwlth.1996); *Albert G. Hoyem Trust, supra;* and *Thompson, supra.*

**17.** *See, e.g., Granite Properties Ltd. Partnership v. Manns,* 140 Ill.App.3d 561, 571–72, 94 Ill. Dec. 353, 487 N.E.2d 1230, 1237 (1986); *Russakoff v. Scruggs,* 241 Va. 135, 140, 400 S.E.2d 529, 533 (1991); and *Bear Island Water Ass'n v. Brown,* 125 Idaho 717, 725, 874 P.2d 528, 536 (1994).

**18.** *See, e.g., Marrs,* 128 S.W.2d at 609 (way of necessity involves "strict necessity; mere convenience will not do"). *See* n. 19, *infra. See also* KRS 416.350, which creates a private right of eminent domain to acquire a right-of-way for landlocked property.

**19.** *See, e.g., Hall v. Coffey,* Ky.App., 715 S.W.2d 249 (1986); *Carr v. Barnett,* Ky.App., 580 S.W.2d 237 (1979); *Hillary Corp. v. United States Cold Storage,* 250 Neb. 397, 550 N.W.2d 889 (1996); *Graff, supra;* and *Morris v. Simmons,* 909 S.W.2d 441 (Tenn.Ct.App. 1993). A small number of courts apply a

more flexible reasonableness standard of necessity based on whether the expense of creating an alternative route exceeds the value of the entire servient estate. *See, e.g., D'Addario v. Truskoski,* 57 Conn.App. 236, 749 A.2d 38 (2000); *Daniel v. Fox,* 917 S.W.2d 106 (Tex. App.1996); *Beck v. Mangels,* 100 Md.App. 144, 640 A.2d 236 (1994); *Jackson v. Nash,* 109 Nev. 1202, 866 P.2d 262 (1993); and 25 Am.Jur.2d *Easements and Licenses,* § 42 (2d ed. 1996 & Supp.2001)

**20.** *See Standard Elkhorn Coal Co. v. Moore,* 217 Ky. 317, 289 S.W. 261 (1926); Michael A. DiSabatino, J.D., Annotation, *Way of Necessity Over Anothers Land, Where a Means of Access Does Exist,* 10 A.L.R.4th 447 (1981); and *Scoville v. Bailey,* 307 Ky. 719, 211 S.W.2d 816 (1948).

**21.** *See, e.g., Phillippi v. Knotter,* 2000 Pa.Super. 71, 748 A.2d 757 (2000); *McConnell v. Satterfield,* 576 N.E.2d 1300 (Ind.Ct.App. 1991); *Canei v. Culley,* 179 W.Va. 797, 374 S.E.2d 523 (1988); *Burling v. Leiter,* 272 Mich. 448, 262 N.W. 388 (1935); *Gowan v. Crawford,* 599 So.2d 619 (Ala.1992); *Miskoff v. Cross Fox Condominium Ass'n,* 460 So.2d 987 (Fla.Dist.Ct.App.1984); and *Marrs, supra. But see Black v. Van Steenwyk,* 333 Ark. 629,

easement has the burden of proving the existence of the easement by clear and convincing evidence.[22]

In the case *sub judice*, the trial court held that Meredith was entitled to an implied right-of-way easement based on the disproportionate expense of creating an alternate route across Meredith's property. The trial court erroneously applied the "reasonable," rather than the "strict," standard of necessity in recognizing an easement in favor of Meredith. The trial court's reliance on the cases of *Bob's Ready to Wear, Inc.* and *Knight* was misplaced because both of those cases involved quasi-easements, not easements by necessity. Kentucky case law has consistently applied the "strict" necessity standard for an easement or way of necessity. While necessity is an important factor in determining the existence of a quasi-easement, it is the sole factor for an easement by necessity. Therefore, in order to imply the intent of the grantor to create an easement and to impose a burden on the dominant estate based on necessity alone, a clear showing of absolute necessity with no other means of access to the servient estate is required.

The trial court's exclusive focus on necessity and its failure to provide any analysis or factual findings on the other factors is indicative of its failure to distinguish between the two theories. In fact, the evidence indicated that there was little or no use of the Joel Stinnett Roadway by the owners of the Meredith tract until shortly after Meredith purchased the property and he began to use the roadway with Carroll's permission. Moreover, the only evidence concerning the roadway's use at the time of the severance of the unity of title was Carroll's testimony that it was used for access to the residence on his tract. Easements by implication are legal creations derived from an examination of the intent of the parties based on the circumstances surrounding the transfer of ownership of property. Quasi-easements involve the prior use of a dominant estate, while easements by necessity involve the need for access to property. The trial court's opinion incorrectly applied the lesser standard for necessity associated with quasi-easements, rather than easements by necessity.

As the trial court noted, there are no Kentucky cases dealing with an easement by necessity where only a portion of a claimant's property lacks ready access to a public road because of an obstruction. In *Phillippi, supra,* the appellants owned a 45–acre tract adjacent to the appellees' property, consisting of a western 40–acre parcel and an eastern five-acre parcel separated by a 100 foot railroad right-of-way. A public road ran through the appellants' 40–acre parcel, and an old roadway on the appellees' property connected the appellants' five-acre tract with the public road. The Court held that the appellants failed to establish an easement by necessity stating:

> From the time of the original severance to the present, the western portion of the land currently owned by appellants has been accessible from a public road. Therefore, the situation caused by the original severance was not that of strict necessity in which property was con-

970 S.W.2d 280 (1998)(finding quasi-easement to portion of property under reasonable necessity standard); *Liles v. Wedding,* 84 Or. App. 350, 733 P.2d 952 (1987); and *Beeson v. Phillips,* 41 Wash.App. 183, 702 P.2d 1244 (1985)(finding easement under state private condemnation statute applying reasonable necessity standard).

**22.** *See Griffeth v. Eid,* 1998 N.D. 38, 573 N.W.2d 829 (1998); and *Roberts v. Smith,* 41 Wash.App. 861, 707 P.2d 143 (1985).

veyed in such a way that access to it from a public road could not be had except by passing over the remaining land of the grantor. We believe the term "strict necessity" in this context requires that property be without any access to a public road. Allowing an individual to use the doctrine of easement by necessity to ensure that each portion of his or her singular property has access to a public road would be far too expansive for this intrusive doctrine.[23]

In *Marrs, supra,* the Court applied the "strict" necessity standard in refusing to recognize an easement by necessity over a passway abutting a public road.

In recognition of the traditional use of the "strict" necessity standard for easements by necessity under Kentucky law,

we believe that Meredith failed to establish that he is entitled to an easement by necessity over the Joel Stinnett Roadway since he has direct access to the J. Carroll Road along the northern portion of his property and some access to the back portion of the tract over his own property. Accordingly, we reverse the order of the Edmonson Circuit Court to the extent it granted a right-of-way easement in favor of Meredith.[24]

All CONCUR.

**23.** 748 A.2d at 761. *See also McConnell, supra* (declining to recognize easement by necessity over driveway to back portion of land fronting a public road even though creation of alternate route would be difficult and expensive).

**24.** We note that the trial court's decision quieting title to the land on which Joel Stin- nett Roadway is located to Marlow Carroll was not appealed.