## Louisville & Nashville Railroad Company v. Ward.

(Decided October 17, 1912.)

Appeal from Jefferson Circuit Court.
(Common Pleas Branch, Second Division).

1. Passway.—The word "necessary" in section 4348 of the Kentucky Statutes, relating to the condemnation of a right of way for a passway means a reasonable and not absolute necessity.

2. Passway—Condemnation of Land For.—Where the evidence showed that the petitioner for a passway had two outlets that could be made accessible for use by the expenditure of several hundred dollars for each, he was entitled to have a passway condemned across the right of way of a railroad, the evidence showing that the opening of the passway was reasonably necessary to enable him to perform his duties as a citizen.

3. Passway—Weight Given to Verdict of Jury.—While the verdict of the jury in a proceeding to open a passway is not conclusive on the court, it should be given the same weight as the verdict of a jury in other cases.

HELM & HELM, BENJAMIN D. WARFIELD and C. H. MOORMAN for appellant.

EDWARDS, OGDEN & PEAK and HERMAN D. NEWCOMB for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellee Ward owns about twenty-five acres of land adjoining on the north the right of way of the Louisville and Interurban Railway Company between O'Bannon and Anchorage. South of the interurban right of way and adjoining it is the right of way and

tracks of the appellant railroad company, and south of
its right of way and adjoining it is a public turnpike
road. The residence of appellee is located about 155
feet from the right of way of the Interurban Company
and 685 feet west of his residence there is a private
crossing from the north side of the interurban and rail-
road tracks to the turnpike, and 900 feet east of his resi-
dence there is a public crossing from the north side of
the tracks of these companies to the turnpike road.

This proceeding was instituted in the county court
of Jefferson County for the purpose of condemning a
right of way for a passway to the turnpike road across
the tracks and right of way of the appellant company in
front of the residence of appellee and by proper orders
made in the county court the passway was established.
The appellant company, not satisfied with the judgment
of the county court prosecuted an appeal to the Jef-
ferson Circuit Court, and in that court a judgment on
the verdict of a jury was also entered establishing the
passway desired by appellee. From this judgment this
appeal is prosecuted.

Although other minor errors are assigned, the chief
contention of counsel for appellant is that the establish-
ment of the passway was not necessary to afford appel-
lee an outlet to the public highway and, therefore, the
judgment ordering its establishment should be reversed.
The right to open a passway is conferred by section 4348
of the Kentucky Statutes, reading in part that a pass-
way may be established "whenever it shall appear to a
county court that it is necessary for a person to have
a private passway over the land of one or more persons
to enable him to attend courts, elections, a meeting
house, a mill, warehouse, ferry, or railroad depot most
convenient to his residence." It will be observed that
the court has no authority to establish a passway unless
it be necessary to enable the person or persons petition-
ing for the passway to perform some of the duties or go
to and from some of the places mentioned in the statute.
Land cannot be taken against the consent of the owner
for the purpose of establishing a passway merely for
the pleasure or convenience of another person, or as
said in Vice v. Eden, 113 Ky., 255:

"The applicant is not entitled to the passway over
the lands of the defendant for his mere convenience.
He can only have it established when necessary to en-

able him to get to the county seat, his voting place, and the like, but the word 'necessary' in the statute is not to be read as though the words were 'absolutely necessary.' The necessity contemplated by the statute is a practical necessity. If the applicant's outlet to the highway on his own ground, or the way he now has, does not afford him practical access to the highway and cannot be made to do so at a reasonable expense, then he is entitled to the establishment of the way in contest as a necessity.''

But not withstanding the construction in Vice v. Eden of the word ''necessary,'' as used in the statute, it is strongly contended by counsel for appellant that ''the word necessary employed in the statute means an actual and absolute necessity without which the person seeking the passway would not be able to attend courts, elections, a mill, warehouse, ferry, or railroad depot.'' But we are not disposed to depart from or modify the construction placed on the word ''necessary,'' in Vice v. Eden, and which is in harmony with the current of authority, as may be seen by an examination of the following cases: Samish River Boom Co. v. Union Boom Co., 32 Wash., 586; Corey v. Swagger, 74 Ind., 211; Lawton v. Rivers, 2 McChord, 445, 13 Am. Dec., 741; Butte A. & P. R. R. Co. v. Montana Union R. R. Co., 16 Mont., 504, 31 L. R. A., 298, 50 Am. St. Rep., 508; Aurora & G. Ry. Co. v. Harvey, 178 Ill., 477; City of Detroit v. Moesta, 91 Mich., 149; Knevals v. Florida Cen. & P. R. R. Co., 66 Fed., 224; Pettingil v. Porter, 8 Allen, 1, 85 Am. Dec., 671. Other authorities may be found in 15 Cyc., 632.

To give this word the limited and narrow meaning contended for by counsel for appellant would in many cases defeat the purpose of the statute by denying the use of a way to the citizen who could not show that he had no other means of going to or from the places pointed out in the statute. If the citizen could find a temporary outlet by permission over his neighbor's land, or if by going a long and circuitous route could succeed in getting to the places the statute declares he should have a right of way to, or could with great inconvenience and perhaps some danger, go out over what would ordinarily be called an impassable road, he could not, according to the views of counsel, condemn a right of way that would furnish him

a reasonably accessible outlet. But the statute was not designed to subject the citizen, in the discharge of duties that all citizens are at times called on to perform, to this character of inconvenience, and while the statute should not be given a too liberal construction or one that would violate the spirit of the Constitution prohibiting the taking of private property for private use, neither should it be given a strained construction that would impose on the citizen burdens and disadvantages amounting to a virtual prohibition of the rights granted by the statute.

Passing now to the matter of practice, the question whether or not a passway is necessary is one of fact to be determined as are other questions of fact, by the evidence heard on the trial whether it be before the court or a jury. And when the tribunals, constituted for the purpose of determining in the first instance the necessity for the passway, have found that it is necessary, we should not be disposed to set aside their finding upon the question of fact unless it was palpably or flagrantly against the weight of the evidence. In other words, while the verdict of the jury is not conclusive on the court it should be given the same weight as the verdict of a jury in other cases. Having this view of the law applicable to the case, let us now see how it stands on the facts.

The commissioners appointed by the county court reported that:

"John W. Ward (appellee) is absolutely devoid of the means of either ingress or egress from a line drawn from his house to the Louisville & Nashville Railroad tracks, and unless he passes to the east a distance of 920 feet, or to the west a distance of 600 feet, he is without outlet. If the former ingress or egress is regarded it puts the said Ward out at a point on an old and an almost abandoned county road running at right angles to the present new county pike. This old county road approaches the new pike from an incline and angle thoroughly impracticable and absolutely unfitted for traffic purposes, and very dangerous to said Ward or to any person who attempts to reach the county pike from said county road. If the other plan, that is to say of using the outlet 600 feet to the west is pursued, it would force said Ward to pass over the property of other persons and demand a great outlay of expense and particularly during bad weather, and in winter deprive him of any

means of outlet, much of it being caused by the fact that the same is subject to overflow, the overflow being occasioned by a culvert constructed and maintained by the Louisville & Nashville Railroad Company. * * * And we find that it is necessary, in order that the said Ward may have access to the places mentioned in the statute, to have granted the passway."

In addition to and supporting the conclusions in this report, the evidence shows that on the east appellee's land adjoins a county road that runs into the turnpike, and that on the west his land is separated from the western crossing by the land of Ogden over which he has a permissive right of way. That to construct a road suitable for travel from the residence of appellee to the western crossing would cost about $800, and to construct such a road to the county road and eastern crossing would cost about $1,000. It is further shown that a road constructed to the eastern crossing would intersect the practically abandoned county road before mentioned running into the turnpike, and that the place where this county road crosses the railroad is almost impassable on account of an embankment, and is also made dangerous for travel by a rather high cut through which the railroad runs, and that to reach the western crossing Ward must go a part of the way over the land of his neighbor Ogden.

All of the witnesses who testified in the case gave it as their opinion that the establishment of the passway for the use of appellee was necessary, although they of course admitted that he had the two other outlets mentioned. The evidence, the substance of which we have related, was in our opinion sufficient to warrant the jury in finding that the passway was necessary, and to authorize the court to render a judgment in conformity to their verdict. The instructions, to which no objection is made, conformed to the rule laid down in Vice v. Eden, and directed the jury that "if they believed from the evidence that appellee had a passway sufficient to enable him to go to the places pointed out in the statute, that they should find for the railroad company." They were further instructed that "appellee was not entitled to the passway merely because it would be more convenient for him than the passway he then had." They were further told that "He was not entitled to the passway if he could construct or have the use of the other pass-

way at a reasonable expense, and that in no event was he entitled to a passway unless it was nesessary to give him an outlet to the statutory places.''

Our attention is called to some objections to evidence introduced in behalf of appellee, but we do not think it necessary to extend this opinion in commenting on the assigned errors relating to the admission of evidence. An examination of the record satisfies us that little if any of the evidence objected to was incompetent and all of it served to illustrate the necessity for the passway.

The judgment is affirmed.