## Goose Creek Lumber Company v. White.

(Decided March 1, 1927.)

(Rehearing Denied with Modification, June 7, 1927.)

### Appeal from Clay Circuit Court.

1. **Eminent Domain.**—In proceedings by owner of standing timber, under Ky. Stats., section 3779a-1, to condemn property for tramway for hauling timber, proposed tramway over another's land held practically necessary to give condemnor outlet, where nearby creek was too small to afford means of transportation and road-

way was of dirt running through low, marshy lands, making tramway virtual necessity.

2. Eminent Domain.—Ky. Stats., section 3779a-1, permitting condemnation of property for passageway or tram road over another's land where necessary for outlet or passage held not to require that absolute necessity be shown; practical necessity for passway or road being sufficient.

3. Eminent Domain.—Landowner owning large body of standing timber held entitled to have property condemned for construction of tram road, under Ky. Stats., section 3779a-1, on showing of necessity therefor, though tramway did not run to railroad switches, but only made physical connection with another tramway, as condemnor could make contracts for use of other tramway and so reach outlet for marketing products, under section 3779a-6, providing right to operate passageway under act should not be exclusive, but should be open to all on paying proper compensation.

4. Eminent Domain.—Where tramway constructed by condemnation, under Ky. Stats., section 3779a-1, for transportation of timber to railroad switch to give condemnor an outlet, was open to public use, and where, under section 3779a-6, owner was compelled to permit public use thereof on paying proper compensation, tramway held public use.

5. Eminent Domain.—Private property may not be condemned, except for public use.

6. Eminent Domain.—Ky. Stats., section 815, restricting mines and quarries to distance of three miles in condemnation of land for railroads, held not applicable to tramways for transportation of lumber to railroad switch to give condemnor an outlet.

7. Statutes.—Statutes must be construed as written.

8. Eminent Domain.—Owner of timber was not denied right to acquire easement for tramway under power of eminent domain because it was foreign corporation; tramway not being railroad, and hence not within prohibition of Constitution, section 211.

THOMAS D. TINSLEY and W. W. RAWLINGS for appellant.

H. C. FAULKNER and M. L. BROWN for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—
Reversing.

Appellant owns a large boundary of standing timber on Goose creek in Clay county. Its shipping point for this timber is at Garrard's Station on the Cumberland & Manchester Railroad, some seven miles distant. Appellee owns a large farm about midway between these points. Some years since she sold the timber on her farm and the purchaser, Garrard Bros., doing business as the Free Hollow Lumber Company, by contract with other landowners, constructed a tramway from her line

south to Garrard's Station, for the purpose of removing this timber, and is now engaged in removing that timber and in using this tram for the purpose. Appellant contracted with the Free Hollow Lumber Company for the use of that tram in removing its timber, and purchased a right of way for a tramway from appellant's land north to its boundary. In order to connect these two trams, on the 13th of June, 1923, it instituted an action in the Clay county court pursuant to section 3779a-1, Ky. Statutes, to condemn a right of way 20 feet wide over the lands of appellee for a tram road. Commissioners were appointed and reported, exceptions were filed by appellee, and on a jury trial she was awarded as damages $100 for the first year the tram was in use and $50 for each additional year of its continuance. Appellee took an appeal to the circuit court, where appellant filed an amended and substituted petition fully presenting the issues. Appellant filed answer, and on a jury trial upon instructions that are not criticized appellee was awarded $700 in damages. Appellee was granted a new trial, and, the case coming on to be heard again, the court concluded at the close of appellant's evidence that it had manifested no right to the remedy sought, and directed the jury to return a verdict for appellee, and dismissed the petition; hence this appeal.

Upon the rendition of judgment in the county court, the Goose Creek Lumber Company deposited in court the amount stated in the judgment, and constructed the tram road over appellee's lands, and has since been using the entire tramway from its lands to Garrard's Station in the removal of its timber. Other persons are also using this tramway by contract and agreement with the two lumber companies. It appears in evidence that the Manchester road, a public highway that has been in continuous use for more than 40 years, and Goose creek, both parallel the tramway its entire length, and that prior to the construction of the Cumberland & Manchester railroad in 1917 much timber was transported over these routes, and it is strongly argued that these routes obviated the necessity for a tramway. However, Goose creek is shown to be a small stream 30 or 40 feet wide. Its rises are irregular, and, ordinarily, subside quickly, affording little means of transportation. The public highway mentioned is a long-established road and in general use and does connect the points named; but it is a dirt road, runs through low and marshy lands for a

large part of the way, and becomes almost impassable in wet weather, and cannot be used for heavy hauling during most of the year, so that while these could be utilized for removing some of this timber, such use is entirely impractical, making the tramway virtually necessary for that purpose. We have held that the statute does not contemplate an absolute necessity, but a practical necessity, and conclude that such necessity exists. L. & N. R. R. Co. v. Ward, 150 Ky. 42, 149 S. W. 1145.

It is insisted and the lower court, in its written opinion held that the tramway condemned does not run to the railroad switches, but makes physical connection with the tramway of the Free Hollow Lumber Company, three miles distant from the railroad, and therefore its condemnation is not authorized by section 3739a-1 Ky. Statutes, which reads:

"Whenever it shall appear to a county court that it is necessary for a person to have a private passway over the land of one or more persons to enable him to attend courts, elections, a meeting house, a mill, warehouse, ferry, a railroad depot, most convenient to his residence, or whenever it shall appear to a county court, that it is necessary for a person to have a private tramroad or haul road over the land of one or more persons to enable him to reach a warehouse, steamboat landing, ferry, railroad switch or navigable stream, for the purpose of operating and marketing the products from a lead mine, iron works, salt works, coal mine, fire clay and other minerals, oil well, stone quarry, sand bank or merchantable forest timber, the court shall appoint commissioners, as in case of a road. . . ."

It is true that under the statute the purpose of the tramway is to enable the condemnor to reach an outlet for the marketing of his products; in this instance a railway switch. But a physical connection is made with the other tramway and the right to use the latter is acquired by contract, and the condemnors do reach the railway. They are given the right to make such contracts for the use of the other tramway or even to condemn same for such use by section 6 of the act (Acts 1920, c. 124, Ky. Stats., section 3739a-6), which reads:

"Provided, that nothing in this act shall operate to give any person, firm or corporation exclusive use

of said passage, but any other person, firm or corporation shall have the right to use the same upon paying proper compensation therefor. If no agreement can be made for such compensation, then the right to such use may be condemned as herein provided.''

Clearly, in this particular, appellant's action is within the terms of the statute.

(3) The next insistence is that it is not shown that any other person, firm, or corporation has a right to use the tramway, and that it is therefore devoted to the private use of appellant, and not authorized by either the Constitution or the statute. As to this it is elementary that under our Constitution private property may not be condemned, except for public use, and each case turns upon the character of the use to which the easement is to be devoted. This distinction is clearly drawn in Chesapeake Stone Co. v. Moreland, 126 Ky. 656, 104 S. W. 762, 31 Ky. Law Rep. 1075, 16 L. R. A. (N. S.) 479, thus:

"The controlling and decisive question is: Have the public the right to its use upon the same terms as the person at whose instance the way was established? If they have, it is a public use; if they have not, it is a private one. If the owner can exercise the same kind of dominion over it as he does over other property owned by him, if he can close it up, if he can prohibit all or any part of the public from its use, then it is clear that its establishment would be private and not public; and the right of eminent domain could not be invoked in its creation.''

The evidence shows that the owners of this tram are permitting others to use it under contract, and, if they should refuse so to do, such persons could enforce their rights under the provisions of section 6, supra, and so long as the use of the tram is continued the owner may be compelled to permit its proper use by every one who desires to use it upon the payment of proper compensation as provided in the statute. Nor may the owner close such passway to the use of such persons so long as the owner continues to use it. This constitutes it a public use, even though it may abandon its easement upon ceasing to use it.

(4) It is also argued that as section 815 of the statute restricts mines and quarries in the condemnation of land

for a railroad to a distance of three miles that the same rule should be applied as to tramways. We do not see the force in this suggestion. The Legislature had the right to fix the extreme length of either. It did this in one instance, but did not in the other, and each must be construed as it is written.

(5) It is lastly argued that appellant is a foreign corporation, and for that reason denied the right of eminent domain. We have seen that this proceeding was in accordance with the letter and spirit of the statute, and that neither the proceedings nor the statute conflict with sections 13 and 242 of the Constitution relative to the exercise of eminent domain generally. It will also be observed that the statute does not, and in this respect could not, discriminate between its own citizens and the citizens of another state regularly engaged in business therein; also, in the absence of constitutional inhibition, the Legislature has full power to authorize the exercise of such right. This is conceded by appellant, but reliance is had on section 211 of the Constitution, which provides:

"No railroad corporation organized under the laws of any other state, or of the United States, and doing business, or proposing to do business, in this state, shall be entitled to the benefit of the right of eminent domain or have power to acquire the right of way or real estate for depot or other uses, until it shall have become a body corporate pursuant to and in accordance with the laws of this commonwealth."

The section of the Constitution quoted applies to railroads. The statute applies to tramways. There is a wide difference between railroads and tramways. Railroads not only have tracks and easements, but also act as common carriers in the transportation of persons and property. The owner of a tramway merely has a right to its use. It may also be used by other persons but in the manner that passways are used, and in effect it is a passway. The constitutional inhibition extends only to foreign *railroads*. Its purpose does not appear. Perhaps the same purpose could apply to tramways, perhaps not; but they are not included. They are not railroads nor analogous thereto, and we cannot by implication extend the inhibition to them. It follows that the Legislature had authority to act in the premises.

Wherefore the judgment is reversed, and cause remanded for proceedings consistent with this opinion.