RENDERED: SEPTEMBER 22, 2016
TO BE PUBLISHED



## Supreme Court of Kentucky

2014-SC-000368-DG

DATE _2/16/17 Kim Redmon, DC_

KENTUCKY PROPERTIES HOLDING LLC      APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.      CASE NOS. 2012-CA-000842-MR AND 2012-CA-000978-MR
GALLATIN CIRCUIT COURT NO. 07-CI-00214

DONALD SPROUL      APPELLEE

**OPINION OF THE COURT BY JUSTICE HUGHES**

**REVERSING**

This dispute concerns the status of Church Lane, an old road or passway in Gallatin County, and, more specifically, a disagreement among neighboring landowners as to the ownership of Church Lane. Donald Sproul contends that the road is owned by the county or alternatively is a public road, while Kentucky Properties Holding, LLC (hereafter "the Hornsbys")[1] argue that the road is their private property. After a bench trial, the circuit court determined that Church Lane is a private road, but on appeal the Court of Appeals reversed that judgment, finding that Church Lane is a public road. After

---

[1] The Court of Appeals permitted the substitution of Kentucky Properties Holding, a limited liability company (LLC), as a party in the place of landowners Michael and Mary Jo Hornsby. For clarity we will refer to the Appellant as the Hornsbys, as the record refers to them in this way.

careful consideration of the record, we reverse the Court of Appeals and reinstate the judgment of the Gallatin Circuit Court.

## FACTUAL AND PROCEDURAL BACKGROUND

The Hornsbys are the owners of a 196-acre farm in Gallatin County, Kentucky. The farm is located on the southern portion of a strip of land which is bracketed by the Ohio River and Paint Lick Creek. North of the Hornsbys' farm is a 4.5 acre tract divided among four landowners who are no longer parties to this case.[2] At the northernmost tip of the strip of land is a tract of land belonging to Donald Sproul.

Due to the geographic orientation of the area, the owners of the "middle property" and Sproul must cross the Hornsbys' property to reach their land. Access to Sproul's property and the "middle property" is obtained by traveling across a gravel road known as Church Lane. Church Lane begins adjacent to the Paint Lick Baptist Church parking lot at Highway 1992, travels through the Hornsbys' farm before turning north near the Ohio River, continues on to intersect with the "middle property" and then traverses that property up to Sproul's land. On a marked aerial photograph agreed to by the litigants as a joint exhibit, Church Lane looks roughly like the capital letter "L" with the base or horizontal bar of the "L" dipping southward and being somewhat longer than the vertical bar of the "L." Virtually all of Church Lane is on the Hornsbys'

---

[2] The four landowners, the Hinkels, Stambaughs, Hudepohls, and Days, were initially parties to this lawsuit. However, after they agreed to use Church Lane in conformance with the Hornsbys' wishes, they were dismissed from the suit. For clarity we will collectively refer to their land as the "middle property."

property, the exception being a small portion of the road (the upper portion of the vertical bar of the "L") that traverses the "middle property" and seemingly ends at Sproul's tract.

In 2006, the Hornsbys erected a gate on Church Lane, near where the road intersects with Highway 1992. According to the Hornsbys, the Church Lane gate was necessary to bar entry to trespassers who were stealing, dumping trash, and otherwise doing damage to their property. While the Hornsbys provided their neighbors (Sproul's predecessors-in-interest and the "middle property" landowners) with the Church Lane gate code, they preferred that their neighbors use an alternate route.

That alternate route, Carolina Road, is a second gravel passway constructed by the Hornsbys across their property. Carolina Road is accessed from nearby Jackson Landing Road and proceeds northward across the Hornsby property, intersecting with Church Lane (within the horizontal bar of the "L") and providing an alternate access road for the Hornsbys' neighbors. As they had on Church Lane, the Hornsbys erected a gate on Carolina Road--this one at its intersection with Jackson Landing Road. When the Hornsbys gave their neighbors the code to the Carolina Road gate, they insisted that the neighbors access their land through the use of Carolina Road.[3] Despite the Hornsbys' request, Sproul's predecessors-in-interest continued to use the Church Lane gate to access their property.

---

[3] The parties disagree as to whether Sproul has been given the key code to access the gate on Carolina Road.

3

In October 2007, the Hornsbys filed a lawsuit in the Gallatin Circuit Court to obtain an order requiring the "middle property" owners and Sproul's predecessors-in-interest to keep the Church Lane gate locked. In December 2007, the circuit court entered a temporary injunction, requiring that the Hornsbys' neighbors cease and desist leaving the Church Lane gate unlocked or propped open.

Subsequently, Sproul purchased his relatives' property and began to develop it into a subdivision. To accomplish this, Sproul brought back hoes, bulldozers, and other large equipment onto his property, which the Hornsbys allege caused damage to Church Lane. Additionally, the Hornsbys argue that Sproul continued to leave the Church Lane gate open, creating the potential for trespassers to enter and damage their property.

In June 2011, the Hornsbys moved to amend their complaint to add Sproul as a named defendant. Additionally, the Hornsbys moved to dismiss the other named defendants due to their agreement to leave the Church Lane gate locked and to instead use the Carolina Road gate. Further, the Hornsbys filed a motion to modify and enforce the temporary injunction against Sproul. In their suit, the Hornsbys sought a permanent injunction, compensatory damages, and a declaratory judgment defining safe use of Church Lane by Sproul.

Sproul opposed the Hornsbys' requests, arguing that Church Lane was a county road and as such, the Hornsbys had no right to erect gates, narrow the roadway, or limit its use. After considering the arguments of both parties, the

trial court issued a temporary injunction mandating the closing and locking of the Church Lane gate after Sproul's entrance and exit until the issue was resolved at trial.

During the ensuing February 2012 bench trial, the Hornsbys called a number of local residents to offer testimony about their knowledge of the private character of Church Lane. Gallatin County Judge Executive Ken McFarland testified that Church Lane is not maintained by the county and that the county had no plans to maintain the road in the future. Additionally, McFarland stated that he was unaware of any county records suggesting that Church Lane is a county road. McFarland's testimony was supported by that of Kenneth Stambaugh, one of the "middle property" owners, who testified that in the twenty-six years that he had owned his property, he had no recollection of the county taking steps to maintain Church Lane. Rather, according to McFarland, the neighbors were collectively responsible for maintaining Church Lane.

The Hornsbys also called Chris Gephart, a licensed surveyor who disagreed with Sproul's claim that Church Lane was a county road depicted in the 1883 Atlas. Attorney Stephen Kenkel, who served as the closing agent when the Hornsbys purchased their farm, testified that prior to the purchase, he conducted a search and was unable to find records of any deeded easements, passways, or right–of-ways on what is now the Hornsbys' property.

Sproul similarly relied on the testimony of local witnesses to support his claim of the public nature of Church Lane.[4] Kenny French, the former Judge Executive of Gallatin County from 2007-2010, testified that he had been a tenant farmer on what is now the Hornsby farm in the mid-1970s. Kenny French recalled that a school bus used to travel down Church Lane in the 1970s and that to facilitate the bus's route, the county had graded or graveled the road where the bus stopped to turn around and proceed back to Highway 1992. Additionally, French expressed his view that Church Lane had been maintained by the county for years.

However, in both his deposition and trial testimony, Kenny French noted that he only considered a portion of Church Lane to be a county road. During his deposition when asked to identify where the public or county portion of Church Lane ended, Kenny French noted that he believed that it ended at the intersection of Church Lane and Carolina Road. (As noted, this intersection was within the horizontal bar of the "L" formed by Church Lane.) French's view of Church Lane consisting of two portions, one private and the other public, was reiterated during questioning about county maintenance of Church Lane. When Kenny French added Church Lane onto the county maintenance list, he only added the portion previously referenced—the eastern portion of Church Lane ending at the intersection of Carolina Road. Further, during French's

---

[4] Sproul also introduced at trial a series of maps and documents, which he claimed demonstrated that Church Lane was a county road and not a private passway.

trial testimony, the Hornsbys referred him to the map that he had marked during his deposition and he reiterated that past a point on Church Lane he had never witnessed it be publicly maintained or alluded to as a county road.[5]

Sproul also offered the testimony of Kenny French's brother, Denny French, who is the pastor of the nearby Paint Lick Baptist Church. Denny French recalled that prior to the early-1990s there had been a family with school children who lived on what is now the Hornsby farm and that a school bus would travel down a portion of Church Lane to pick them up. Additionally, Denny French testified that the county removed snow from Church Lane once in the late 1970s and conducted culvert repair for the Mid-Valley Pipeline in the early 1980s. Sproul also called Gallatin County Attorney John Wright who testified as to his opinion that Church Lane is a public passway, based on his interpretation of the 1883 Atlas and his personal experiences.

To rebut the testimony of Denny and Kenny French, the Hornsbys called Larkin LeGrand. LeGrand, a former tenant farmer on Church Lane, testified that he rode the county school bus that serviced the area from 1985 to 1996. However, LeGrand denied that the bus had ever travelled down Church Lane; instead, the bus stopped at the parking lot of the Paint Lick Baptist Church and waited there to transport the children who lived in tenant houses on the farm.

---

[5] Kenny French did insist that Church Lane was referenced as a county road in the 1883 Atlas.

After hearing the evidence, the trial court made detailed findings of fact which included the following determinations. First, the trial court found that Church Lane was not the county road depicted in the 1883 Atlas. Second, the court found the county never formally adopted Church Lane as a county road, and that it is not currently on the county's list of maintained roads.[6] Third, the trial court noted the county's maintenance of the road in the 1970s, 1980s, and early 1990s.

Based on these findings of fact, the trial court made a two-part ruling as to the status of Church Lane. As to the western portion of Church Lane, past its intersection with Carolina Road and proceeding northward to the neighbors' properties, the trial court found that it was a private passway. However, as to the eastern portion of Church Lane (roughly half of the horizontal bar of the "L"), the trial court deemed that it had been maintained by the county and used by the public. Nonetheless, the trial court determined that this portion of Church Lane was also a private road. The trial court concluded that the public use and county maintenance of the road ceased fifteen years prior to the Hornsbys' purchase of their property in 2005. Based on this conclusion and the determination that the requirements of Kentucky Revised Statute (KRS) 178.116(1) had not been met, the trial court found that Church Lane had been abandoned by the county and that it had reverted to a private passway.

---

[6] In March 2010, the Gallatin Fiscal Court voted to include the road on the county maintenance list. However, at a subsequent public meeting the fiscal court voted to remove Church Lane from the county maintenance list until the legal status of the road was established.

8

Sproul appealed the judgment of the circuit court, and in a unanimous decision the Court of Appeals reversed. The Court of Appeals concluded that all of Church Lane was a public road as a matter of law based on our decision in *Bailey v. Preserve Rural Roads of Madison Cty., Inc.*, 394 S.W.3d 350 (Ky. 2011) and KRS 178.116. The Court of Appeals reasoned that as Church Lane provided Sproul with necessary access to his property, its public status could not be discontinued without a joint petition to the fiscal court by the landowners and the private parties needing access. As one of the private parties, Sproul, disagreed to the reversion, Church Lane was required to remain an open public road. Additionally, the Court of Appeals remanded the case to the circuit court to determine the width of Church Lane.

We granted discretionary review to evaluate whether the Court of Appeals employed the proper analysis to determine whether Church Lane is a public road. Ultimately, we conclude that it did not.

## ANALYSIS

As this is an appeal from a trial without a jury, our standard of review is set forth in Kentucky Rule of Civil Procedure (CR) 52.01. CR 52.01 requires that the trial court make specific findings of fact and state separately its conclusions of law relied upon to render the court's judgment. On review, "[f]indings of fact, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." CR 52.01. Indeed, "judging the credibility of witnesses and weighing evidence are tasks within the exclusive province *of the trial court.*"

9

*D.G.R. v. Com., Cabinet for Health & Family Servs.*, 364 S.W.3d 106, 114 (Ky. 2012) (quoting *Moore v. Asente,* 110 S.W.3d 336, 354 (Ky. 2003)).

As such, "[i]f the trial judge's findings of fact in the underlying action are not clearly erroneous, *i.e.,* are supported by substantial evidence, then the appellate court's role is confined to determining whether those facts support the trial judge's legal conclusion." *Commonwealth v. Deloney,* 20 S.W.3d 471, 473-74 (Ky. 2000). Indeed, simple doubt as to the appropriateness of a finding will not justify its reversal. *D.G.R.,* 364 S.W.3d at 114 (citation omitted). However, while deferential to the lower court's factual findings, appellate review of legal determinations and conclusions from a bench trial is *de novo. Nash v. Campbell Cty. Fiscal Court,* 345 S.W.3d 811, 816 (Ky. 2011).

## 1. The Trial Court Properly Determined that Church Lane is Not a County Road.

While often used interchangeably in Kentucky jurisprudence, the terms "county road" and "public road" are not synonymous. Under KRS 178.010, "'[c]ounty roads' are public roads which have been formally accepted by the fiscal court of the county as a part of the county road system." Since the enactment of Chapter 80, Acts of 1914, a formal order of the fiscal court has been required to establish a county road. *Sarver v. Allen Cty., By & Through Its Fiscal Court,* 582 S.W.2d 40, 41 (Ky. 1979) (citing *Rose v. Nolen,* 179 S.W. 229, 230 (Ky. 1915)). Therefore, while a road may be "public," it is not automatically a "county road."

In the case at bar, the trial court determined that Church Lane was not a county road. This conclusion was based on the county's decision not to formally adopt Church Lane as a county road.[7] As such, the trial court did not err in determining that Church Lane is not a "county road."

## 2. The Court of Appeals Misapplied KRS 178.116 and *Bailey* in Evaluating Whether Church Lane is a Public Road.

In determining that the entirety of Church Lane is a public road, the Court of Appeals concluded that such a finding was mandated by the language of KRS 178.116(1) and this Court's decision in *Bailey*. However, KRS 178.116 was not intended to replace the longstanding law governing prescriptive easements; nor did our decision in *Bailey* purport to create a new standard for the establishment of a public road.

KRS 178.116 entitled "Discontinuance of a road," governs the process by which a county road or a road formerly maintained by the county or the state shall be deemed discontinued and its possession reverted to the owners of the tract to which it originally belonged. Thus KRS 178.116(1) states:

> (1) Any county road, or road formerly maintained by the county or state, shall be deemed discontinued and possession shall revert to the owner or owners of the tract of land to which it originally belonged unless at least one (1) of the following conditions exists:

---

[7] While, the fiscal court included Church Lane on the county road maintenance list in September 2010, it was removed from the list several weeks later. However, the inclusion of Church Lane on the maintenance list would have been insufficient to formally adopt Church Lane as a county road. While such an action would have been sufficient previously, since the adoption of Chapter 80, Acts of 1914, a formal order of the fiscal court is required to establish a county road. 1983 Ky. Op. Att'y Gen. 2-123 (1983).

11

(a) A public need is served by the road;
(b) The road provides a necessary access for a private
person;
(c) The road has been maintained and policed by the county
or state within a three (3) year period.

KRS 178.116 clearly does not purport to supplant the common law on the question of whether a road is public or private. It only applies when assessing whether a discontinuation has occurred.

Similarly, *Bailey* is inapplicable to determining whether a road is of a public or private character. In *Bailey*, the fiscal court decided to discontinue maintenance on a county road pursuant to KRS 178.070. 394 S.W.3d at 353. Subsequently, a landowner attempted to block that road with a gate. *Id.* A non-profit organization filed suit to force removal of the gate to enable continued access to the road. *Id.* at 354-355. This Court determined that the landowner was barred from maintaining the gate, as the road provided necessary access to one of the landowner's neighbors and there had not been a petition filed satisfying the requirements of KRS 178.116(4). *Id.* at 360. While *Bailey* clarified what occurs after the county discontinues maintenance of a county road, it did not address the standards by which a public road is established in the first instance. Nor, did *Bailey* cast into doubt the existing common law or statutory process by which a public road is established by prescription. Therefore, the Court of Appeals erred by relying on KRS 178.116 and *Bailey* to determine that the whole of Church Lane was a public road.

12

### 3. The Court of Appeals Erred in Concluding that the Western and Northerly Portion of Church Lane is a Public Road.

While Church Lane is not a county road, as the trial court correctly found, a separate analysis is necessary to determine whether the entirety of the road or a portion of it is public. The process by which a public road is established is controlled by the common law and statute. The fiscal court is empowered under KRS 178.115 to establish or alter the location of any public road or similar thoroughfare in the county. However, it is also well established that a road may become public by prescription. *Ewen v. Commonwealth*, 39 S.W.2d 969 (Ky. 1931); KRS 178.025 ("[a]ny road . . . used without restrictions on a continuous basis by the general public for fifteen (15) consecutive years, shall conclusively be presumed to be a public road.").

As there was no action taken by the fiscal court to formally establish Church Lane as a county road, our inquiry turns to whether a public road was established by prescription. In the trial court's March 15, 2012 judgment there were detailed findings of fact concerning the public's use of Church Lane and the intermittent efforts by the county to maintain the road. The county's maintenance efforts included providing gravel work to the eastern portion of Church Lane up to the road's intersection with Carolina Road. Additionally, the trial court recognized that a culvert repair performed by the county in the 1980s occurred on this section between the church parking lot and the Carolina Road intersection. It is noteworthy, that those maintenance efforts were limited to the eastern portion of Church Lane, rather than the whole of

13

the road. As to the western and northerly portion of Church Lane there was scant proof presented regarding the county's upkeep of the road.[8]

However, the Court of Appeals implicitly rejected the trial court's findings of fact stating that "[t]he record in this case is clear that for some time, up through at least the mid-1970s, Gallatin County performed maintenance on the entire length of Church Lane." Yet, the Court of Appeals failed to identify what facts it relied upon in the record in reaching this conclusion. Having reviewed the record, we find none supporting this expansive statement. Accordingly, we are unable to agree with the Court of Appeals that the trial court's findings of fact regarding the lack of county maintenance of the western and northerly portion of Church Lane were clearly erroneous.

This conclusion is essential to determining whether the western and northerly portion of Church Lane is of a public or private character. As there was insufficient evidence presented concerning the public's use or the county's upkeep and maintenance of the western and northerly portion of Church Lane we are unable to conclude that a public road was ever established on this part of Church Lane by prescription.

---

[8] While not addressed in the trial court's factual findings of fact, in their briefs Sproul and the Hornsbys discuss the testimony of Julie Sullivan, a former Gallatin County road worker. Sullivan, who worked for the county for two years in the 1970s, testified that that he had been part of a road crew that provided maintenance to Church Lane. According to Sullivan, the county's maintenance took the form of placing gravel and filling in potholes. Sproul and the Hornsbys disagree as to whether this maintenance occurred over the whole of the Church Lane or if it was limited solely to the eastern portion of the road.

## 4. The Court of Appeals Erred in Determining that the Eastern Portion of Church Lane Was Not an Abandoned or "Discontinued" Public Road.

After deciding that the western and northerly portion of Church Lane is private, the trial court concluded that the eastern portion of the road was previously a public road. The trial court in its judgment, noted that the county had performed maintenance on the eastern portion of Church Lane from the mid-1970s to the early 1990s. Additionally, there was testimony detailing the public's use of the road—including the county's use of the road to transport children to school. As such, the trial court concluded that the eastern portion of Church Lane was at one time a public road.

The trial court then analyzed whether the county had abandoned that portion of the road under KRS 178.116. The trial court concluded that the conditions listed in KRS 176.116(1) were not met and that as such the county had indeed abandoned the eastern portion of Church Lane. However, on appeal, the Court of Appeals, determined that the trial court erred in its application of KRS 176.116. The Court of Appeals concluded that as the road provides necessary access to Sproul it remains a public road.

As noted, KRS 178.116 governs the discontinuance of a county road or a public road formerly maintained by the county or state. Under KRS 178.116(1), when a road is discontinued it reverts to the owner or owners of the tract of land to which it originally belonged, unless one of the following conditions exists: "(a) [a] public need is served by the road; (b) [t]he road

15

provides necessary access for a private person; (c) [t]he road has been maintained and policed by the county or state within a three year period."

While the eastern portion of Church Lane is not a county road, the county's previous maintenance on the road triggers the application of KRS 178.116. We then evaluate whether any one of the three conditions of KRS 178.116(1) is met to prevent the discontinuation of the road. In the case at bar, Sproul argues that Church Lane provides necessary access to his property.[9] However, the trial court concluded that the eastern portion of Church Lane was not necessary for Sproul and the other "middle property" landowners as they had been provided access to their property through the use of Carolina Road.

Resolution of this issue depends on this Court's interpretation as to what constitutes "necessary access." A question of statutory construction is a matter of law and therefore subject to the *de novo* standard of review. *Cumberland Valley Contractors, Inc. v. Bell Cty. Coal Corp.*, 238 S.W.3d 644, 647 (Ky. 2007). "The cardinal rule of statutory construction is that the intention of the legislature should be ascertained and given effect." *Jefferson*

---

[9] In his brief, Sproul also argues that "Kentucky courts have historically extended the protection against blocking public roads, or passways, to those roads that were 'public roads' but did not meet the technical definition of a 'county road' because of the lack of being adopted by the formal action of the fiscal court after 1914." In support of this argument, Sproul cites the Court to *Blankenship v. Acton*, 159 S.W.3d 330 (Ky. Ct. App. 2004). In *Blankenship*, the Court of Appeals affirmed the trial court's enjoining of Blankenship from restricting his neighbors' access to the road. *Id.* at 334. However, the outcome in *Blankenship* was not due to a longstanding public policy against blocking public roads, but rather a narrow result based on Blankenship's failure to demonstrate that this section had reverted to his tract of land instead of that of his neighbor. *Id.*

16

*Cty. Bd. of Educ. v. Fell*, 391 S.W.3d 713, 718 (Ky. 2012) (quoting *MPM Financial Group, Inc. v. Morton*, 289 S.W.3d 193, 197 (Ky. 2009)).[10]

We begin our inquiry by examining the language employed by the legislature, "relying generally on the common meaning of the particular words chosen, which meaning is often determined by reference to dictionary definitions." *Fell*, 391 S.W.3d at 719. KRS 178.116(5) defines "necessary access" as, "access to any farm, tract of land, or dwelling, or to any portions of such farm, tract of land, or dwelling." Additionally, "necessary" is defined by Black's Law Dictionary as follows: "1. That is needed for some purpose or reason; essential. 2. That must exist or happen and cannot be avoided; inevitable." Necessary, BLACK'S LAW DICTIONARY (10th ed. 2014).

These definitions offer the Court limited guidance and they are not dispositive as to whether the availability of an alternate route invalidates the argument that Church Lane provides a necessary access for a private person under KRS 178.116(1)(b). However, the term "necessary" has a long history in Kentucky statutory and case law, which is more illuminating.

In *Louisville & N.R. Co. v. Ward*, 149 S.W. 1145, 1146 (Ky. 1912), our predecessor Court was asked to review the county court's condemnation of land belonging to the Louisville & Nashville Railroad Company. Ward, who owned land adjoining the railroad's property, sought the condemnation of the

---

[10] Such a review is in keeping with the view of the legislature as espoused in KRS 446.080(1), which states "[a]ll statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature . . . ."

17

railroad's land to establish a passway from his property to the turnpike. The central argument for the railroad on appeal, was that the passway was unnecessary to grant Ward an outlet to the public highway, and that as such the judgment ordering its establishment should be reversed. *Id.* at 1146. At issue was section 4348 of the Kentucky Statutes, which permitted establishment of a passway, "whenever it shall appear to a county court that it is necessary for a person to have a private passway over the land of one or more persons to enable him to attend courts, elections, a meeting house, a mill, warehouse, ferry, or railroad depot most convenient to his residence." *Id.*

The railroad argued that the word "necessary" employed in the statute meant an actual and absolute necessity. However, this argument was rejected by the Court. In affirming the judgment of the lower court, the Court defined necessity as "a practical necessity" as opposed to an "absolute necessity." *Id.* (quoting *Vice v. Eden*, 68 S.W. 125, 127 (1902)). Subsequently, the Court reviewed the facts of Ward's case to determine whether the passway was necessary.

While Ward had two means of ingress or egress from his home, the use of either route posed a significant risk. The first route, would require Ward to use a nearly abandoned county road, which connected to the present county road at an "incline and angle thoroughly impracticable and absolutely unfitted for traffic purposes." *Id.* at 1147. Further, the use of this route was not just deemed to be impracticable, but rather explicitly deemed to be very dangerous. *Id.* The other available route was also disadvantageous, requiring Ward to

18

cross the land of multiple neighbors. *Id.* Further, during inclement weather the route would be impassable due to the overflow of a culvert maintained by the railroad. *Id.* As both existing routes featured significant hazards, the Court determined that the passway Ward requested was necessary. *Id.*

Other cases illustrate that "necessary access" does not mean "absolute necessity" but rather "practical necessity." In *Williams v. Render*, 200 Ky. 788, 255 S.W. 703 (1923), Williams, the owner of a small bottom farm bordering a river, sought access through his neighbor's property to reach a public thoroughfare, but the trial court rejected his application because there was another route to the farm. In reversing, this Court's predecessor noted that the alternate route crossed the properties of several different landowners, who sometimes would grant and at other times would not grant permission for Williams to cross their properties, and the route was "circuitous," increasing Williams's commute by three or four miles. 255 S.W. at 703. Although not absolutely necessary, the requested access was a "practical necessity." *Id.*

Similarly, in *Goose Creek Lumber Co. v. White*, 219 Ky. 739, 294 S.W. 494 (1927), a passageway was constructed across White's farm to enable a lumber company to transport timber. Because there was a public road and a creek, Goose Creek, that paralleled the passageway for its entire length, White argued that these two routes "obviated the necessity" for the passageway across her property. 294 S.W. at 495. This Court's predecessor noted that necessary access "does not contemplate an absolute necessity, but a practical necessity." *Id.* Goose Creek was found to be a small stream, thirty to forty feet

19

wide, which would rise irregularly and "subside quickly, affording little means of transportation." *Id.* As for the public road, it was a "dirt road, runs through low and marshy lands for a large part of the way, and becomes almost impassable in wet weather," rendering it also "entirely impractical." *Id.* Accordingly, the constructed passageway was allowed to remain as "necessary" for the lumber company's access to its property.

In the case at bar, Sproul contends that Church Lane provides him necessary access to his property. However, through the Hornsbys' construction of Carolina Road, Sproul has been furnished an alternate route to access his property. Unlike in *Ward,* the use of that alternate route does not cause Sproul any unreasonable hardship or pose any danger, nor is there any issue of a circuitous alternate route or erratic access as in *Williams* and *Goose Creek Lumber Co.* Because there is no practical necessity for Sproul to use the entirety of Church Lane, we cannot say that the eastern portion of Church Lane provides Sproul "necessary access" to his property. Accordingly, the trial court correctly determined that Church Lane had been discontinued as a public road under KRS 178.116(1),[11] and the eastern portion of Church Lane reverted back to the Hornsbys as a private road.

---

[11] In its judgment the trial court found "that the public has not used and Gallatin County has not maintained any portion of Church Lane for at least fifteen (15) years prior to the Hornsby's (sic) purchase of their property in 2005." As such, the trial court also found that Church Lane was abandoned as a public road relying on our decision in *Sarver v. Allen Cty., By & Through Its Fiscal Court,* 582 S.W.2d 40, 41 (Ky. 1979). In *Sarver,* the Court noted that "[c]onsidering that a public user ordinarily ripens into a prescriptive easement in 15 years . . . it would seem reasonable to apply the same criterion to a reversal of the process that is an abandonment through nonuse by the general public." *Id.* at 43. To the extent a public road was not

20

## CONCLUSION

For reasons explained herein, the decision of the Court of Appeals is reversed and the judgment of the Gallatin Circuit Court is reinstated.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Todd V. McMurtry
Hemmer DeFrank Wessels, PLLC

Elizabeth A. McCord
Gerner & Kearns Co., LPA

COUNSEL FOR APPELLEE:

Ruth Helen Baxter
Crawford & Baxter, PSC

---

"formerly maintained by the county or state," KRS 178.116 is not applicable and *Sarver* still controls abandonment of that road. However, in this case KRS 178.116 clearly applied because the road was formerly maintained by the county.

21