RENDERED: MAY 7, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1425-MR

T+C CONTRACTING, INC.                                          APPELLANT

                    APPEAL FROM FRANKLIN CIRCUIT COURT
v.                  HONORABLE THOMAS D. WINGATE, JUDGE
                    ACTION NO. 13-CI-01384

COMMONWEALTH OF KENTUCKY,
KENTUCKY TRANSPORTATION
CABINET AND OWENSBORO-
DAVIESS COUNTY REGIONAL
WATER RESOURCE AGENCY                                          APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, COMBS, AND L. THOMPSON, JUDGES.

CALDWELL, JUDGE: After a lengthy bench trial, the Franklin Circuit Court

ruled in favor of the Commonwealth of Kentucky, Transportation Cabinet (the

Cabinet) and the Owensboro-Daviess County Regional Water Resource Agency

(Water Agency) on all claims brought against them by T+C Contracting, Inc.

(T+C). The main disputed issue was, and remains, whether a manhole upon which T+C was working pursuant to a contract with the Cabinet failed because of T+C's improper excavation method or because the manhole's concrete was deteriorated. Because the evidence was conflicting, the trial court had to choose which evidence to believe and which to reject. The trial court's findings in favor of the Cabinet and the Water Agency are supported by substantial evidence, so we affirm.

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

T+C entered into a contract to help with a road project in Owensboro, Kentucky. The project required relocating some of the Water Agency's sewer facilities, though the Water Agency itself was not a party to the contract between T+C and the Cabinet. As it specifically pertains to this appeal, T+C had to connect a new sanitary sewer line into an existing manhole and sewer pipe at Goetz Drive (the manhole). The contract stated that any damage to existing utilities was T+C's sole responsibility to remediate, as were dewatering and sheeting, for which T+C was not entitled to any additional payments.[1]

T+C's initial project plan, according to some testimony at trial, called for excavating around all sides of all manholes involved in the project, but T+C

---

[1] "Dewater" simply means "to remove water from[.]" https://www.merriam-webster.com/dictionary/dewater (last visited March 30, 2021). In this context, "sheeting" means "a lining (such as wood or steel) used to support an embankment or the walls of an excavation[.]" https://www.merriam-webster.com/dictionary/sheeting (last visited March 30, 2021).

nonetheless chose to excavate on only one side of the manhole at issue. One afternoon, after hearing a cracking sound, T+C investigated and discovered the manhole had shifted several inches toward the excavated area, *i.e.*, the manhole had "failed."

Everyone agreed the failed manhole needed to be replaced. The disagreement was why it failed because that impacted whether T+C was entitled to be reimbursed for replacing it. The Cabinet (and Water Agency) asserted that the manhole failed because T+C improperly excavated on only one side of it, exposing the manhole to overwhelming pressure from the nearby earth. T+C contended the manhole failed because its concrete was severely deteriorated. The Cabinet ultimately refused to reimburse T+C, concluding T+C's excavation method caused the manhole to fail. T+C then filed this action against the Cabinet and Water Agency, which eventually proceeded to a lengthy bench trial.

We do not need, for purposes of this appeal, to delve into the testimony presented on a granular level. Instead, we note that T+C initially presented evidence generally tending to show that the manhole failed due to deteriorated concrete. For example, Nick Scaglione, who worked for a concrete research and testing entity, and Dr. Joseph Hagerty, an expert witness, generally testified that the concrete on the manhole was significantly deteriorated.

The trial court initially appeared to be swayed by T+C's evidence, commenting aloud at one point that the manhole seemed to have been "rotten to the core" and "needed to be replaced no matter what." However, though T+C focuses extensively on them in its brief, the trial court's comments were only that—off the cuff musings, not formal, binding rulings. In fact, the trial court stated it was just "talking off the top of my head right now . . . ." And, crucially, the court made those comments before the Cabinet and Water Agency had presented their countervailing evidence.[2]

The Cabinet and Water Agency presented multiple witnesses who testified that the manhole failed because T+C excavated only one side of it. For example, geotechnical engineer George Webb testified that the manhole's concrete was not deteriorated and even a manhole with new concrete would have failed due to T+C's one-sided excavation. Another geotechnical engineer, Neal Wedding, gave similar testimony.[3] A third engineer, Ted Lolley (sometimes called Lolly in

---

[2] Despite T+C's emphasis of them, we need not address the trial court's preliminary oral comments further because, simply put, they lacked *any* actual force of law. "[J]udges often voice views and opinions which may be inconsistent with their final judgments" but "[w]hen there is a conflict between a court's oral statements and the written judgment, the written judgment controls." *Machniak v. Commonwealth*, 351 S.W.3d 648, 652 (Ky. 2011) (quotation marks and citations omitted).

[3] The trial court referred to Wedding as "Dr. Neal Weddy" on page seven of its post-trial ruling, thus misspelling his name and awarding him a doctorate degree which he apparently does not possess. T+C pounces on those errors, but they are typographical-type errors which do not detract from Wedding's substantive testimony or the trial court's evaluation thereof.

the record), testified via deposition that T+C's one-sided excavation approach was imprudent.[4] Also, a former Water Agency employee, Gerald Price, testified that he had inspected the manhole a few weeks before it failed and found it to have then been in good condition. Price also opined that the proper method is to excavate all around a manhole to avoid placing so much pressure on it from the earth.

Several months after the bench trial concluded, the trial court issued an opinion and order wholly favorable to the Cabinet and the Water Agency. After recounting some of the testimony, the court reached these key conclusions:

> 3. Having heard the testimony of the expert witnesses for all three (3) parties to this action, it is the Court's finding that the evidence is overwhelming that the failure of the Goetz drive manhole was the direct and proximate result of inadequate dewatering of the site and the method of excavation of the manhole.
>
> 4. By performing a one-sided excavation of the manhole, forces were placed upon the manhole that caused it to fail.
>
> 5. The Court finds and concludes that the concrete was not deteriorated due to the testimony of Ted Lolley and the various photos entered into evidence.
>
> 6. The Court finds and concludes that T+C's excavation of the manhole was indirect [sic] contravention of their

---

[4] The trial court's opinion and order incorrectly states that Lolley testified at a certain date and time during the trial, when actually only his deposition was introduced into the record. T+C seizes on that error but, again, the minor error does not detract from Lolley's deposition testimony or the trial court's evaluation thereof. "The trial court is the finder of fact whether the case is tried by deposition or by personal attendance, and the judgment of the trial court may not be reversed unless the findings are clearly erroneous." *Largent v. Largent*, 643 S.W.2d 261, 263 (Ky. 1982).

-5-

[sic] own excavation plan, contrary to accepted practices of excavation of a manhole and in violation of OSHA regulations.

Opinion and order, p. 7-8. T+C then filed this appeal.

## STANDARD OF REVIEW

The trial judge, as the finder of fact, has the sole ability to weigh the evidence and determine the credibility of the witnesses. *Kentucky Properties Holding LLC v. Sproul*, 507 S.W.3d 563, 568 (Ky. 2016). We may not disturb the trial court's findings of fact unless they are clearly erroneous, bearing in mind that court's exclusive ability to assess witness credibility. *Id.* "When evidence is conflicting, this Court cannot substitute its judgment unless the findings of fact are manifestly against the weight of evidence." *Yung v. Grant Thornton, LLP*, 563 S.W.3d 22, 60 (Ky. 2018). If the trial court's findings of fact are not clearly erroneous, meaning they are supported by substantial evidence, "then the appellate court's role is confined to determining whether those facts support the trial judge's legal conclusion. Indeed, simple doubt as to the appropriateness of a finding will not justify its reversal." *Sproul*, 507 S.W.3d at 569 (internal quotation marks and citations omitted). We do, however, review *de novo* the trial court's legal conclusions. *Id.*

## ANALYSIS

As aptly framed by the trial court, the "main issue" was "whether the excavation of the manhole caused the manhole to shift or was the manhole in such poor condition that it collapsed due to concrete failure." Given that discrete overarching issue, T+C does not focus on the particular elements of its various claims, nor does it argue any evidence was improperly admitted or excluded. Instead, T+C lists only three interrelated main issues: 1) whether the trial court's conclusion that the manhole's concrete had not seriously deteriorated is illogical or unsupported by the evidence; 2) whether T+C's excavation method caused the manhole to fail; and 3) whether the trial court's references to T+C's having violated OSHA standards and to the Cabinet's paying T+C to replace the manhole after it failed again were erroneous or irrelevant.

*Deteriorated Concrete and T+C's Construction Methods*

T+C argues the manhole initially failed because the concrete was deteriorated; the Cabinet and Water Agency argue the manhole failed because T+C excavated improperly. The choice appears binary in that either the manhole failed due to the poor state of its concrete or because T+C excavated improperly—but not both. The trial court, having to choose one conflicting proximate cause or the other, concluded the concrete was not deteriorated and the manhole instead failed due to T+C's one-sided excavation process. Thus, though T+C presents them

-7-

separately, the issue of whether the concrete was fatally degraded and whether T+C's excavation method was improper are inextricably intertwined, so we shall address them together.

We are an appellate court of review, so we do not write on a blank credibility slate "because judging the credibility of witnesses and weighing evidence are tasks within the *exclusive province* of the trial court." *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (emphasis added). When viewed through that deferential lens, the trial court's decision cannot be disturbed.

Stressing some photographs of the manhole, many of which are also found in its brief, T+C insists "[n]o reasonable person could look at this manhole . . . and honestly say the 'concrete was not deteriorated.'" And the photos do seem, at least at first glance, to depict concrete that is not in pristine condition (which is not surprising since the concrete at issue had not been freshly poured when the manhole failed). But, as the Water Agency cogently notes in its brief, there was testimony that some corrosion is expected because *every* sewer manhole suffers acid attack. Consequently, the pertinent question is "not whether the Goetz Drive manhole had ever suffered acid attack in its twenty-five years of existence . . . ."

Instead, the true question is what "was the proximate cause of the failure of the manhole[?]"[5]

T+C's "fatally deteriorated concrete" argument is supported by some evidence, such as Scaglione's expert testimony and report, but there is contrary evidence. For example, Webb testified that the concrete was good and that the photographs emphasized by T+C depict damage caused by its own improper excavation, not deterioration.[6] As a result, T+C's vehement protestations to the contrary notwithstanding, there is evidence to support the court's conclusions that the concrete had not deteriorated and the photographs do not depict deteriorated concrete. Consequently, though another finder of fact may have reached a wholly different conclusion, we must reject T+C's argument that the trial court's deterioration conclusions are illogical or unsupported by substantial evidence.

The question then becomes whether T+C's excavation method caused the manhole to fail. Again, the evidence was mixed and conflicting. Hagerty, for example, testified that the manhole would have failed even if T+C had excavated

---

[5] In fact, the Water Agency's director of engineering, Dean Behnke, testified that acid attacks occur in every sewer manhole, so some corrosion is expected.

[6] In concluding the concrete was not degraded, the trial court referred to Lolley's testimony instead of the seemingly more definitive testimony from others, such as Price, Webb and Wedding. But our Supreme Court has held that "[i]f an appellate court is aware of a reason to affirm the lower court's decision, it must do so, even if on different grounds." *Mark D. Dean, P.S.C. v. Commonwealth Bank & Tr. Co.*, 434 S.W.3d 489, 496 (Ky. 2014). Therefore, we note Webb's testimony, which is sufficient to support the trial court's core conclusion(s).

uniformly on all sides of the manhole. However, Price, Webb, Wedding and Lolley all generally testified to the contrary. In fact, T+C admits in its brief that "several witnesses" criticized its "means and methods" by testifying that "T+C should have excavated around the entire circumference of the manhole instead of only on the north side and that dewatering was not adequate." The trial court was free to give more credence to the witnesses who were critical of T+C than to the witnesses who were critical of the state of the manhole's concrete. T+C quibbles with the analysis and educational or professional background of the witnesses for the Cabinet and Water Agency but is unable to cite any authority to buttress its argument that the trial court had to believe its witnesses and disbelieve those of its opponents. For example, T+C has not shown that the evidence presented by the Cabinet and Water Agency was inadmissible or so outlandish as to be unworthy of belief by rational factfinders.

Weighing the evidence and assessing credibility are matters reserved for the finder of fact, not appellate courts. *Moore*, 110 S.W.3d at 354. In plain English, there was evidence to support the baseline positions of T+C and the Cabinet and the Water Agency. As we held, albeit in a different context, "[u]ltimately, the [trial court] was faced with conflicting testimony, and had to choose one version as preferable to the other. When the testimony is conflicting, we will not substitute our decision for that of the trier of fact." *Ford Contracting,*

-10-

*Inc. v. Kentucky Transp. Cabinet*, 429 S.W.3d 397, 412-13 (Ky. App. 2014).

Consequently, though perhaps the trial court engaged in rhetorical judicial hyperbole when it stated the evidence favoring its conclusions was "overwhelming," there was substantial evidence to support the trial court's conclusion that the manhole failed because T+C excavated improperly. And since an appellate court may not reweigh the merits of conflicting evidence, we affirm.

*OSHA Violation and New Manhole Construction*

The trial court also found that T+C's excavation method violated OSHA regulations; T+C argues that finding was wrong and irrelevant. The fact that T+C deems the OSHA findings to be irrelevant dooms its request for appellate relief because irrelevant matters play no role in a court's decision and any errors which do not impact the outcome of a case are perforce harmless. *See* Kentucky Rule of Civil Procedure (CR) 61.01; *CSX Transp., Inc. v. Begley*, 313 S.W.3d 52, 69 (Ky. 2010) ("When considering a claim of harmless error under CR 61.01, the court determines whether the result probably would have been the same absent the error . . . .") (footnote and citations omitted).

T+C's superintendent, Dennis Coffman, admitted that T+C was cited by OSHA regarding the manhole excavation. But Coffman said the citations related to having a ladder which was not three feet above the sheeting, having a footprint on a beam and for what he called "depth over twenty" (presumably

-11-

meaning the hole was over twenty feet deep, though he did not explain why or how having such a hole was an OSHA violation).  None of those three citations facially pertains to any regulations requiring excavation around the entire perimeter of the manhole, nor have the parties cited to where, if at all, we may view the OSHA citation(s) in the voluminous record.  Webb also testified that T+C failed to obtain a shoring plan stamped by a professional engineer, which OSHA requires for excavations deeper than twenty feet.  However, that testimony also does not specifically pertain to OSHA's requiring excavation on all sides of a manhole such as the one at issue.

The trial court did not explain the evidentiary basis by which it concluded T+C's one-sided excavation method violated OSHA regulations, nor did it cite any specific regulation(s) T+C violated.  The Water Agency essentially ignores the OSHA matter in its brief, and the Cabinet has not pointed us to specific evidence to support its contention that "[t]he OSHA standards are relevant to the case because the OSHA standards would have required complete excavation around the Manhole and an engineer's design and plan with respect to the excavation.  V.R., 10/23/18, 10:00."  The trial was not held on *October* 23, 2018.  However, on *August* 23 at 10:00 a.m., Webb testified the movement of the manhole could have been avoided if sheeting had been done prior to the excavation, but he did not testify that OSHA required excavating around the entire

-12-

manhole.  We decline to watch the entire multi-day trial or sift through the thousands of pages in the gargantuan record to attempt to find specific evidence to support the Cabinet's assertion that OSHA required "complete excavation around the Manhole . . . ."  *See, e.g.*, *Monroe v. Cloar*, 439 S.W.2d 73, 73 (Ky. 1969).

However, we need not explore the OSHA matter further because we agree with T+C that it is irrelevant since it does not impact the fundamental conclusion that T+C caused the manhole to fail.  So, even if we were to assume (solely for purposes of argument), that the trial court erred by concluding that OSHA regulations forbade T+C's one-sided excavation method, T+C would not be entitled to relief because that error would be harmless.

T+C's final issue also involves, at most, a harmless error.  As T+C notes in its brief, "[a]fter the new [second] Goetz Drive manhole was constructed, it failed" and so the Cabinet contracted with T+C to replace the manhole again, at a cost of over $2,000,000.  The trial court concluded the Cabinet's paying T+C $2,000,000 to construct the third manhole showed the Cabinet's good faith.  T+C claims that conclusion was erroneous as all the payment showed was that the Cabinet complied with its contractual obligations.  Any error by the trial court in finding that the $2,000,000 payment showed the Cabinet's good faith is harmless because, again, nothing involving that $2,000,000 payment impacts the bottom line conclusion that T+C's acts/omissions, not poor concrete, caused the first manhole

to fail. *CSX Transp., Inc.*, 313 S.W.3d at 69. And the conclusion that T+C caused the first manhole to fail doomed all of T+C's sundry causes of action.

## CONCLUSION

For the foregoing reasons, the Franklin Circuit Court is affirmed.

ALL CONCUR.

| | |
|---|---|
| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEE COMMONWEALTH OF KENTUCKY, TRANSPORTATION CABINET: |
| Gerald L. Stovall<br>Louisville, Kentucky | |
| | Stewart C. Burch<br>Frankfort, Kentucky |
| | BRIEF FOR APPELLEE OWENSBORO-DAVIESS COUNTY REGIONAL WATER RESOURCE AGENCY: |
| | Patrick D. Pace<br>Stephen C. Pace<br>Owensboro, Kentucky |