RENDERED: SEPTEMBER 15, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0584-MR

ANN THRALL                                                                                    APPELLANT

v.               APPEAL FROM MONROE CIRCUIT COURT
                 HONORABLE DAVID L. WILLIAMS, JUDGE
                 ACTION NO. 20-CI-00127

AL THRALL AND COLEMAN HURT                                          APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; ACREE AND JONES, JUDGES.

THOMPSON, CHIEF JUDGE: Ann Thrall ("Appellant") appeals from an order of

the Monroe Circuit Court denying her Kentucky Rules of Civil Procedure ("CR")

59.05 motion to alter, amend, or vacate findings of fact, conclusions of law, and

order entered on April 6, 2022. She argues that the circuit court erred in granting

sole custody of the parties' minor child ("R.T.")[1] in favor of Al Thrall

---

[1] Due to the nature of the proceedings, we will use the child's initials.

("Appellee").  After careful review, we find no error and affirm the April 6, 2022 order.[2]

## FACTS AND PROCEDURAL HISTORY

Beginning in 2019, the Cabinet for Health and Family Services filed a series of juvenile petitions in Monroe District Court alleging neglect of children by Appellant and Appellee.  An extensive procedural history followed, resulting in the district court removing the custody of the minor children from Appellant on April 21, 2020, and placing it with the Cabinet.  The removal was based in part on Appellant's unwillingness to conform to accepted norms regarding the education and discipline of her children, which is discussed more *infra*.  It appears that during this time, Appellee was living in Illinois, where he retained custodial rights. In July 2020, the children visited Appellee in Illinois for about a week, and then continued to stay with him after the visit ended.

On December 29, 2020, Appellant filed a petition with the Monroe Circuit Court seeking custody and child support.  In March, 2022, the still-pending

---

[2] In her Notice of Appeal, Appellant attempts to appeal from the order denying her CR 59.05 motion to alter, amend, or vacate the April 6, 2022 order granting custody in favor of Appellee. Orders denying CR 59.05 motions "are interlocutory, *i.e.*, non-final and non-appealable and cannot be made so by including the finality recitations." *Tax Ease Lien Investments 1, LLC v. Brown*, 340 S.W.3d 99, 103 (Ky. App. 2011) (footnote and citations omitted).  Under circumstances void of prejudice, we may consider such an appeal as "properly taken from the final judgment that was the subject of the CR 59.05 motion." *Id.* at n.5 (citation omitted).  As such, we will consider Appellant's appeal as if taken from the April 6, 2022 order.

neglect proceedings in the district court were consolidated with the custody and child support action in the circuit court.

On June 7, 2021, a hearing was held before the Domestic Relations Commissioner ("DRC") on the petition for custody and child support. About three weeks later, the court-appointed Friend of the Court ("FOC") and Appellee Coleman Hurt, and another hearing was conducted. On November 15, 2021, the DRC made findings and recommendations which were submitted to the circuit court. Appellant responded with written objections and filed an additional motion for Christmas visitation.

On March 3, 2022, the circuit court conducted a hearing to consider Appellant's objections to the DRC's recommendations. The court heard arguments from the parties' respective counsels and considered the opinion of the FOC. In addition, the court heard testimony from the sole remaining minor child, R.T. Judge David L. Williams interviewed R.T. in the presence of each party's counsel but with the parties absent. Counsel for each party was allowed to question R.T.

After considering the proof and the record, the circuit court rendered its findings of fact, conclusions of law, and order on April 6, 2022. It determined in relevant part that given the testimony of the witnesses, the reintroduction of Appellant into the life of R.T. would be traumatic for the child and seriously endanger her physical, mental, moral, or emotional welfare. It based this

conclusion on Appellant's unwillingness to avail herself of services aimed at improving the home environment; Appellant's history of manipulating the children; the allegations of abuse and neglect; prior attempts to undermine the DCBS[3] process; and, her unwillingness to acknowledge the need for any improvement. The court found that Appellant showed an unwillingness to conform to accepted norms regarding the education and discipline of her children.

The court recounted the testimony of DCBS supervisor Misty Morgan and case worker Lori Slaughter, each of whom found Appellant to be uncooperative. Ms. Slaughter thought that the children's answers to her questions seemed scripted by Appellant, and she believed that Appellant placed recording devices on the children when they were speaking with DCBS.

The court went on to find the child to be intelligent, articulate, and easily able to discern truth from falsity, and that child was credible and convincing. It found that Appellee provided a suitable environment to raise the child, and one in which the child could flourish. It also determined that Appellee was capable of ensuring that the child received the proper education and healthcare. The court awarded sole custody of R.T. to Appellee. It left the door open for future expansion or normalization of Appellant's timesharing, conditioned on 1) proof of psychological evaluation by a qualified professional; 2) Appellant following the

---

[3] Department for Community Based Services.

recommendations of that professional; and, 3) proof of compliance with a DCBS case plan.  Thereafter, Appellant, *pro se*, filed a CR 59.05 motion to alter, amend, or vacate the custody order.  The CR 59.05 motion was denied and this appeal followed.

## STANDARDS OF REVIEW

We review the trial court's findings of fact pursuant to Kentucky CR 52.01, and will not disturb those findings unless clearly erroneous.  *Owens-Corning Fiberglas Corp. v. Golightly,* 976 S.W.2d 409, 414 (Ky. 1998).  Findings of fact are not clearly erroneous if supported by substantial evidence.  *Kentucky State Racing Commission v. Fuller,* 481 S.W.2d 298, 307 (Ky. 1972).  Substantial evidence is that evidence which, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the minds of reasonable people.  *Id.* at 307-08.  This standard applies to child custody proceedings.  *Miller v. Harris*, 320 S.W.3d 138, 141 (Ky. App. 2010).

We review child visitation under an abuse of discretion standard. *Coffman v. Rankin*, 260 S.W.3d 767, 770 (Ky. 2008).  An appellate court may "only reverse a trial court's determinations as to visitation if they constitute a manifest abuse of discretion, or were clearly erroneous in light of the facts and circumstances of the case." *Drury v. Drury*, 32 S.W.3d 521, 525 (Ky. App.

2000) (citation omitted).  We review legal issues *de novo*.  *Carroll v. Meredith*, 59

S.W.3d 484, 489 (Ky. App. 2001).

**ARGUMENTS AND ANALYSIS**

Appellant, through counsel, first argues that the circuit court erred in

interviewing R.T. with no recording having been made nor cross-examination

allowed.  She asserts that this violates Kentucky Revised Statutes ("KRS")

403.290, that the court relied on the improper interview in denying her custody,

and that it forms a basis for reversing the order on appeal.

KRS 403.290 states:

> (1) The court may interview the child in chambers to
> ascertain the child's wishes as to his custodian and as to
> visitation.  The court may permit counsel to be present at
> the interview.  The court shall cause a record of the
> interview to be made and to be part of the record in the
> case.
>
> (2) The court may seek the advice of professional
> personnel, whether or not employed by the court on a
> regular basis.  The advice given shall be in writing and
> made available by the court to counsel upon request.
> Counsel may examine as a witness any professional
> personnel consulted by the court.

Thus, the decision whether to interview the child in chambers is

discretionary, as is the court's determination of whether to allow counsel to be

present.  If the interview is conducted in chambers, the court is required to record

the interview and make it part of the record.  *Id.*

Appellant maintains that the circuit court's interview of R.T. occurred "in chambers," thus triggering the mandatory recording requirement of KRS 403.290. In contrast, Appellee asserts that the interview occurred in open court, with R.T. seated on the witness stand, with counsel present, and both parental parties absent from the courtroom. Appellee argues that since the interview did not occur "in chambers," KRS 403.290 is not implicated.

BLACK'S LAW DICTIONARY (7th ed. 1999) defines a judge's *chamber* as follows: "1. The private room or office of a judge. 2. Any place that a judge transacts official business when not holding a session of the court."

As there is no record of R.T's interview, we have no basis for concluding whether it occurred in open court or in chambers per KRS 403.290. As Appellee's account of the interview is much more specific than that of Appellant's, including a description of where R.T. sat and who was present, we tend to believe that the interview occurred in open court with the parties absent and not "in chambers" per BLACK'S LAW DICTIONARY and KRS 403.290. The parties' written arguments, however, do not constitute evidence of record, and we will not engage in guesswork as to where the interview occurred. In paragraph 36 of the court's findings of fact, the court stated that it interviewed R.T. in chambers on March 2, 2022. In paragraph 37, it stated that on the same date, and at Appellant's request, it allowed all counsel to question the child. Thus, it is possible that the court

interviewed R.T. in chambers, and then allowed counsel to interview her in open court. We simply do not know and will not guess.

*Arguendo*, if the court did interview R.T. in chambers and erred in failing to record the interview as required by statute, we would find such error to be harmless. CR 61.01 states,

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

In paragraph 39 of the custody order on appeal, the Monroe Circuit Court stated that R.T.'s testimony "was consistent with the testimony and proof previously in the record." R.T.'s testimony confirmed what was already in the record and it does not appear to have changed the outcome of the proceeding. As such, even if the Monroe Circuit Court erred in failing to comply with the mandatory requirements of KRS 403.290 – a claim which we cannot conclusively resolve – we would find such error to be harmless as it did not affect the substantial rights of the parties. *Id.*

-8-

Appellant next argues that the Monroe Circuit Court improperly failed to consider the statutory factors relating to custody as set out in KRS 403.270(2). She asserts that the circuit court's findings of fact were nearly verbatim from the FOC's Response to Petitioner's Exceptions, and that the court failed to follow the statutory mandate to make findings of fact reflecting specific consideration of the KRS 403.270 factors. She argues that this constitutes substantial error.

KRS 403.270(2) states in relevant part:

The court shall determine custody in accordance with the best interests of the child and equal consideration shall be given to each parent and to any de facto custodian. Subject to KRS 403.315, there shall be a presumption, rebuttable by a preponderance of evidence, that joint custody and equally shared parenting time is in the best interest of the child. If a deviation from equal parenting time is warranted, the court shall construct a parenting time schedule which maximizes the time each parent or de facto custodian has with the child and is consistent with ensuring the child's welfare. The court shall consider all relevant factors including:

(a) The wishes of the child's parent or parents, and any de facto custodian, as to his or her custody;

(b) The wishes of the child as to his or her custodian, with due consideration given to the influence a parent or de facto custodian may have over the child's wishes;

(c) The interaction and interrelationship of the child with his or her parent or parents, his or her siblings, and any other person who may significantly affect the child's best interests;

(d) The motivation of the adults participating in the custody proceeding;

(e) The child's adjustment and continuing proximity to his or her home, school, and community;

(f) The mental and physical health of all individuals involved;

(g) A finding by the court that domestic violence and abuse, as defined in KRS 403.720, has been committed by one (1) of the parties against a child of the parties or against another party. The court shall determine the extent to which the domestic violence and abuse has affected the child and the child's relationship to each party, with due consideration given to efforts made by a party toward the completion of any domestic violence treatment, counseling, or program[.]

In paragraph 44 of the findings of fact, the Monroe Circuit Court expressly determined that R.T. being in the care, custody, and control of Appellee represents R.T.'s best interests. This finding was based on a comprehensive review of the record and all relevant statutory factors, including the DRC's findings which were based on "multiple witnesses and extended testimony from both parties[.]" The court found that Appellant showed an unwillingness to conform to accepted norms regarding the education and discipline of her children, and that she repeatedly showed an unwillingness to comply with the Monroe County DCBS. This, the court found, created a substantial risk to R.T. The court found that though Appellee has made poor decisions in the past, he has shown himself amenable to the services offered him, and capable of utilizing them for the

-10-

betterment of the child. The court found that Appellant was evasive and lacked candor before the DRC; that her testimony was not credible; and, that her testimony sharply and repeatedly contradicted that of other, credible witnesses. The court went on to find that Appellant failed to accept responsibility for her actions and was unwilling to take corrective measures to improve the home environment. The court found that Appellant changing the children's names and excessive physical discipline "to be disturbing and concerning regarding the wellbeing of the minor child while in her care[.]"

While Appellant correctly notes that the Monroe Circuit Court did not list each KRS 403.270(2) factor in a rote or serial fashion, it is clear that the court closely considered the relevant statutory factors in reaching its conclusion that custody being placed with Appellee rather than Appellant is in R.T.'s best interests. This satisfies the statutory standard. The circuit court's conclusion on this issue is amply supported by the record, and we find no error.

Appellant's third argument is that the FOC failed to follow the court's orders regarding the FOC's duties set out in KRS 403.300, and that the court improperly utilized the FOC's recommendations. Specifically, she contends that the FOC failed to file a report within 10 days of the August 2, 2021 DRC hearing, and that the circuit court thereafter relied too heavily on the January 19, 2022

Response to Petitioner's Exceptions. The substance of this argument is that this failure deprived Appellant of the due process to which she was entitled.

KRS 403.300(3) requires the court's appointed investigator – in this case the FOC – to mail any report to counsel at least 10 days before the hearing. In the matter before us, it appears that the FOC produced no report which accounts for no report being mailed per KRS 403.300(1). Because the FOC filed no report, it follows that the DRC did not rely upon such a report to make its recommendations to the court. As noted by Appellee, the FOC was present at the August 2, 2022 DRC hearing, but Appellant did not question the absence of a written report nor call the FOC to testify. When considered in light of the entire record, and in the context of the FOC's appointment after the first DRC hearing on June 7, 2021 had already concluded, we find no error on this issue.

Appellant's fourth argument on appeal is that the circuit court erred in failing to make independent findings to support the order on appeal. This argument largely mirrors Appellant's second argument regarding the application of the KRS 403.270 factors. Having previously determined that the circuit court made findings sufficient to conclude that R.T.'s best interests were found with Appellee as custodian, and that those findings are reasonably supported by the record, we conclude that the circuit court did not err in failing to make sufficient independent findings.

Appellant's fifth argument is that the circuit court's denial of visitation constituted an abuse of discretion because it was not in line with the recommendations of the DRC or the Cabinet. Appellant points out that there was no judicial finding of abuse or neglect, no criminal charges, and no domestic violence order. Under these facts, Appellant asserts that the court erred in failing to grant her reasonable visitation. As part of this argument, Appellant contends that the circuit court improperly used the juvenile case against her even though no findings of abuse were made in the juvenile proceeding.

KRS 403.320 addresses visitation and states:

(1) A parent not granted custody of the child and not awarded shared parenting time under the presumption specified in KRS 403.270(2), 403.280(2), or 403.340(5) is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral, or emotional health. Upon request of either party, the court shall issue orders which are specific as to the frequency, timing, duration, conditions, and method of scheduling visitation and which reflect the development age of the child.

(2) If domestic violence and abuse, as defined in KRS 403.720, has been alleged, the court shall, after a hearing, determine the visitation arrangement, if any, which would not endanger seriously the child's or the custodial parent's physical, mental, or emotional health.

(3) The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child; but the court shall not restrict a parent's visitation rights unless it finds that the visitation

-13-

would endanger seriously the child's physical, mental, moral, or emotional health.

Per *Drury*, *supra*, we may reverse the circuit court's conclusions as to visitation only if they constitute a manifest abuse of discretion, or were clearly erroneous in light of the facts and circumstances of the case. The question, then, is whether the Monroe Circuit Court abused its discretion in finding that Appellant's visitation of R.T. would endanger seriously the child's physical, mental, moral, or emotional health. We conclude that the circuit court did not abuse its discretion in limiting Appellant to telephone conversations and no physical visitation with R.T. The same findings supporting the award of custody in favor of Appellee listed above support the circuit court's conclusions as to visitation. To summarize, the court found that reintroducing Appellant into R.T.'s life would traumatize the child and seriously endanger her welfare; that Appellant manipulated the children, failed to avail herself of available services, and to evince a willingness to improve; that Appellant had attempted to undermine the DCBS process; and, that she showed an unwillingness to conform to accepted norms regarding the education and discipline of her children. As these findings are supported by the record, they do not constitute a manifest abuse of discretion, nor were they clearly erroneous in light of the facts and circumstances of the case per *Drury*. While the court noted the claims of abuse and neglect, the juvenile proceeding was not the basis for the court's award of visitation in favor of Appellee. We find no error.

-14-

Appellant next appears to argue that it was clear error to send R.T. to live with Appellee in Illinois in July 2020, without Illinois having first conducted an ICPC[4] home study to ensure that Appellee was a proper custodian. The order on appeal was rendered on April 6, 2022, or some 21 months after R.T. was placed with Appellee. We have no basis for finding error in a placement that occurred almost two years prior to the entry of the order on appeal. In any event, and as noted *supra*, the Monroe Circuit Court thoroughly considered all relevant factors per KRS 403.270(2) in concluding that custody of R.T. was properly vested with Appellee rather than Appellant. We find no error.

Lastly, Appellant argues that her religious liberty was infringed by requiring cooperation with the Cabinet against her religious beliefs. She notes that in 2019, a licensed marriage and family therapist, Jonathan Lee, found that Appellant and her children are part of a Christian subculture similar to the Mennonites that follow a modest, plain lifestyle that sets them apart from what is considered the social norm. According to Appellant, Mr. Lee determined that this lifestyle does not suggest in any way that the family is dysfunctional, and he found them to be intelligent, inciteful, and humorous at times. Appellant argues that her belief system is a protected liberty interest per the 14th Amendment to the United States Constitution, and that the imposition of the Cabinet's regulations improperly

---

[4] *See* the Interstate Compact on the Placement of Children set out at KRS 615.030.

infringed upon the constitutionally protected right of parents to raise their children free of undue governmental interference.

The conflict between religious liberty and the Commonwealth's duty to promulgate laws for the general welfare was addressed in *Gingerich v. Commonwealth*, 382 S.W.3d 835 (Ky. 2012). In *Gingerich*, several Amish men were fined for failing to place triangular reflective signage on their horse-and-buggy vehicles. This failure was violative of a new requirement that all slow-moving vehicles employ the signage for the safety of persons using the roadways of the Commonwealth. The defendants argued that the requirement ran afoul of their religious liberty because the signage was in conflict with their religious beliefs.

After the district court, circuit court, and this Court upheld the statute requiring the signage and the resultant fines, the Kentucky Supreme Court affirmed this Court's conclusion that the Kentucky Constitution does not offer more protection for religious freedom than is found in the United States Constitution. The Supreme Court sustained the conclusion that "a neutral law of general applicability enacted for the public welfare . . . does not impermissibly restrict religious practice." *Gingerich,* 382 S.W.3d at 839.

We conclude that KRS Chapter 403, including the specific provisions addressing custody and visitation, are neutral laws of general applicability enacted

-16-

for the public welfare in accord with *Gingerich*. Like the roadway statute in *Gingerich*, the provisions of KRS Chapter 403 addressing custody and visitation are applicable to all persons within the Commonwealth irrespective of religious affiliation, and are reasonably calculated to protect the general welfare of children, parents, and other caregivers. In the language of *Gingerich*, they are neutral and do not impermissibly restrict religious practice. We find no error.

## CONCLUSION

For these reasons, we affirm the April 6, 2022 findings of fact, conclusions of law, and order of the Monroe Circuit Court granting sole custody of R.T. in favor of Appellee, and limiting Appellant's contact to weekly telephone calls until such time that Appellant has complied with the requirements for reunification.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Dianna Riddick
Benton, Kentucky

BRIEF FOR APPELLEE AL THRALL:

Holly Coleman
Edmonton, Kentucky

NO BRIEF FOR APPELLEE COLEMAN HURT.